750 P.2d 87

COUNTY OF KOOTENAI, State of Idaho, Plaintiff–Appellant,

v.

The WESTERN CASUALTY AND SURE-TY CO., a Kansas Corp., duly authorized to do business in the State of Idaho, Foremost Insurance Company, a Michigan corporation, duly authorized to do business in the State of Idaho; Underwriters of Lloyd's of London, a non-admitted insurer of the State of Idaho, Quarles Agency of Coeur d'Alene, Idaho, duly authorized agent of the above-named Defendants, and William Quarles, jointly and severally; Douglas Schedler; Quarles & Schedler Agency, a partnership, and Schedler Agency, of Coeur d'Alene, Idaho, purchaser and successor in interest to Quarles Agency and Quarles & Schedler Agency, Defendants–Respondents,

and

Pacific Insurance Co., a California Corporation, duly authorized to do business in the State of Idaho, Defendant.

No. 16632.

Supreme Court of Idaho.

Feb. 1, 1988.

Howard & Owens, Kenneth B. Howard (argued), Coeur d'Alene, for appellant.

Daniel W. O'Connell, Lewiston, for respondent Western Cas.

Samuel Eismann, Coeur d'Alene, for respondent Foremost.

Eugene L. Miller, Coeur d'Alene, for respondent Quarles.

Sims, Liesche & Newell, P.A., Coeur d'Alene, for respondent Lloyd's. Starr Kelso, argued.

HUNTLEY, Justice.

On October 31, 1975, a judgment was awarded to Nixon against Triber in Kootenai County Case No. 33521, and a Writ of Execution was issued upon that judgment in the sum of $1,674.65. In the course of proceeding upon the Writ of Execution, Kootenai County Sheriff Thor Fladwed executed a sale of real property owned by the Tribers, but failed to comply with the statutory requirements concerning notice and sale under I.C. § 11–302. The sheriff's execution sale was held on December 17, 1975. Howard and Loralee Black purchased the Tribers' property at the execution sale for $1,800, but the fair market value of the property was determined by the court to be $108,200. Sheriff Fladwed issued his deed to the purchasers on June 17, 1976, and the Tribers maintained that they did not learn of the sheriff's sale of their property until after the six month redemption period. The Tribers contested the execution sale on the grounds of improper notice and the resultant litigation culminated in this Court's opinion in *Nixon v. Triber,* 100 Idaho 198, 595 P.2d 1093 (1979).[1]

The Tribers, relying on this Court's decision in *Nixon v. Triber,* brought suit against Sheriff Fladwed in order to obtain damages for the improper sale of their property. The Tribers moved for summary judgment against the sheriff, and on Feb-

---

1. The court below had vacated the execution sale and returned possession of the property to the Tribers. In *Nixon v. Triber,* this Court reversed the lower court's decision, maintaining that the Triber's sole remedy was for actual damages plus a $500 penalty as authorized by I.C. § 11–303.

ruary 5, 1981, the trial court entered its order for summary judgment against Sheriff Fladwed. This judgment was for $108,-200 plus interest, costs, and attorney fees, for a total judgment of $164,433.71. Kootenai County was not a named defendant in the suit against the sheriff, but did pay his attorney fees and eventually paid the judgment against the sheriff.[2]

In the case at bar, Kootenai County has brought action against the three insurers with whom the County had policy coverage for this type of occurrence. The County has also sued Quarles Agency, which is the insurance agency that sold all of the policies to the County. Quarles was also the agency to which the county attorney sent notices of claims and notices of litigation proceedings for forwarding to the insurers. Essentially, the insurers are denying coverage claiming that the County did not give proper and timely notice of claims and suits based upon Sheriff Fladwed's negligence, and claiming that the sheriff's improper execution sale was not a covered loss under the insurance policies.

## I.

### THE CLAIM AGAINST FOREMOST

#### (a) *Duty to Defend*

The Foremost policy is an automobile liability policy with an attached Law Enforcement Officers' Professional Liability endorsement. This policy covers "Kootenai County and/or the officers and members of the Kootenai County Sheriff's Department."

■ Sheriff Fladwed was a defendant in the *Nixon v. Triber* litigation. Sheriff Fladwed was also an insured employee of the Kootenai County Sheriff's Department. Kootenai County had contracted with Foremost for insurance coverage for occurrences such as Sheriff Fladwed's improper execution sale of the Tribers' property. Since the negligent act of the sheriff was within the coverage of the policy, and since the sheriff was an employee insured under the policy Kootenai County obtained from Foremost, the County had every right to expect Foremost to step in and defend the suit against the sheriff. An insurance policy is a contract and the parties' rights and remedies are primarily establishable within the four corners of the policy. See I.C. §§ 41–102, 41–1802, 41–1822.

Assuming that notice to Foremost of occurrences and claims was properly and timely made (which issue is discussed below), the insurer must consider whether or not it has a duty to defend the insured when litigation ensues. The rule regarding an insurer's duty to defend is as follows:

> The duty to defend arises upon the filing of a complaint whose allegations, in whole or in part, read broadly, reveal a *potential* for liability that would be covered by the insured's policy.

*State of Idaho v. Bunker Hill Co.*, 647 F.Supp. 1064, 1068 (D.Idaho 1986). See also, *Hirst v. St. Paul Fire & Marine Ins. Co.*, 106 Idaho 792, 683 P.2d 440 (Ct.App. 1984) (Petition for Review Denied); and *Pendlebury v. Western Casualty & Surety Co.*, 89 Idaho 456, 406 P.2d 129 (1965).

*Bunker Hill* continues with a pithy analysis of how and when an insurer must determine its potential for liability and duty to defend:

> The problem which faces the insurers when a claim is made is determining if there is a potential for liability. However, as noted by the *Hirst* case [supra], since the advent of notice pleading there will likely be broad ambiguous claims made against the insured making it more difficult for the insurer to determine whether the insurance policy covers the claims. But as the court noted, where there is doubt as to whether a theory of recovery within the policy coverage has been pleaded in the underlying complaint, or which is potentially included in the underlying complaint, the insurer must defend regardless of potential de-

---

**2.** On June 1, 1982, Judge Prather, in a memorandum decision, ordered Kootenai County to pay the judgment based on Sheriff Fladwed's failure to comply with the notice requirements of I.C. § 11–302. *Black v. Board of County Commissioners, County of Kootenai,* Case No. 51280.

fenses arising under the policy or potential defenses arising under the substantive law under which the claim is brought against the insured.... It is a misconception of the duty to defend, however, if the insurer refuses to defend and seeks a determination of the duty while the underlying case progresses against the insured, and then if found obligated under its duty, the insurer merely steps in and defends and pays defense fees that have accumulated. The proper procedure for the insurer to take is to evaluate the claims and determine whether an arguable potential exists for a claim covered by the policy; if so, then the insurer must immediately step in and defend the suit. At the same time, if the insurer believes that the policy itself provides a basis, i.e., an exclusion, for noncoverage, it may seek declaratory relief. However, this does not abrogate the necessity of defending the lawsuit until a determination of noncoverage is made. The insurer should not be allowed to "guess wrong" as to the potential for coverage. "[T]he provision for defense of suits is useless and meaningless unless it is offered when the suit arises." 7C. J. Appleman, *Insurance Law and Practice* § 4684 at 83 (Berdal ed. 1979).

Once it is concluded that an insurer owes its insured a duty to defend, the duty to defend and pay defense costs continues until such time as the insurer can show that the claim against the insured cannot be said to fall within the policy's scope of coverage. As stated in *C. Raymond Davis & Sons, Inc. v. Liberty Mutual Insurance Co.,* 467 F.Supp. 17 (E.D.Pa. 1979): "However if coverage (indemnification) depends upon the existence or nonexistence of facts outside of the complaint that have yet to be determined, the insurer must provide a defense until such time as those facts are determined, and the claim is narrowed to one patently outside the coverage. *Id.* at 19."

*Bunker Hill,* 647 F.Supp. at 1068.

The Tribers' original Complaint in *Triber v. Black and Fladwed,* made no specific claim for damages, but demanded an Order declaring Sheriff Fladwed's execution sale null and void, and such other relief as the court might deem just. Sheriff Fladwed's improper execution sale violated the provisions of I.C. § 11–302 by failing to post the required notices and the resulting penalty is found in I.C. § 11–303:

**Sale without notice—Penalty.**—An officer selling without the notice prescribed by the last section forfeits $500 to the aggrieved party, in addition to his actual damages; and a person wilfully taking down or defacing the notice posted, if done before the sale or the satisfaction of the judgment (if the judgment be satisfied before sale) forfeits $500.

Based on the analysis outlined in *Bunker Hill,* it was foreseeable to Foremost that it had a duty to defend an insured county employee until such time that Foremost could prove that the claim against the insured was outside the policy's scope of coverage. Foremost could have protected itself by seeking declaratory relief while defending Sheriff Fladwed against suit. In fact, Kootenai County kept Foremost apprised of the progress of this case well beyond the time of this Court's decision in *Nixon v. Triber* to uphold the improper execution sale. The unfolding of this litigation gradually revealed that there were facts and issues to be considered that were outside the scope of the Tribers' original complaint. After this Court rendered its opinion in *Nixon v. Triber,* of which Foremost was promptly informed by the County, it should have come as no surprise to Foremost that there remained an ongoing duty to defend the interests of Sheriff Fladwed and Kootenai County.

### (b) *Proper and Timely Notice to Foremost*

Based upon our analysis above, Foremost had a duty to defend if notice was given in the manner required by the policy. Sheriff Fladwed held the execution sale on December 17, 1975, and then issued the deed on June 17, 1976, after the six month redemption period had expired. The Tribers maintain that they did not learn of the issuance of the deed until July 12, 1976, and they filed their original complaint on July 15, 1976. The Honorable Gary M.

Haman, then deputy attorney for Kootenai County, sent notice on July 21, 1976, of all court documents and correspondence received, to Quarles Agency, the insurance agent for Kootenai County.

The Foremost policy has specific requirements in the event of a claim or suit:

**Insured's Duties in the Event of Occurrence, Claim or Suit.**

(a) In the event of an **occurrence**, written notice containing particulars sufficient to identify the **insured** and also reasonably obtainable information with respect to the time, place and circumstances thereof, and the names and addresses of the injured and of available witnesses, shall be given by or for the **insured** *to the company or any of its authorized agents as soon as practicable.*

(b) If claim is made or suit is brought against the **insured**, the **insured** *shall immediately forward* to the company every demand, notice, summons or other process received by him or his representative....* (Emphasis added).

Given the above sequence of dates, it is obvious that the county attorney sent notice of the occurrence and suit not only "as soon as practicable" but also "immediately." Since the County could not have been aware of the negligent nature of the sheriff's improper execution and sale until it was discovered by the Tribers, notice could not have been given any sooner by the County.

■ Since notice to Foremost was timely, the real issue is whether notice was properly given "to the company or any of its authorized agents." Foremost had issued two consecutive policies with identical coverage: the first policy covered all occurrences from May 12, 1975, until May 12, 1976, and the second policy extended the original coverage another year until May 12, 1977. The first Foremost policy required notice of occurrence to be given to Miller & Morris, Inc., and the second policy required notice to be given to Superior Underwriters.

Gary Haman sent the following letter to Quarles Agency, the local agent for Foremost:

July 21, 1976

Quarles Agency
1401 Sherman Avenue
Coeur d'Alene, Idaho 83814
*Re: Triber vs. Fladwed, et al*
Dear Sir:

Please find enclosed all court documents and correspondence in my file to date, on the above referenced matter. We are sending you this information since Sheriff Thor Fladwed is involved in the suit, and you are our insurer.

If you should have any questions, please do not hesitate to contact me.

Sincerely,
Gary M. Haman

William Quarles of Quarles Agency testified in his deposition that he notified Miller & Morris both by phone and by letter regarding the Fladwed litigation. Quarles had accepted all of Kootenai County's claims in the past and had sent them to the appropriate insurers. Kootenai County had never been apprised by any insurance carrier that notification sent through Quarles constituted an improper procedure.

In the case at bar, Judge Prather ruled that Foremost was estopped from denying that Quarles Agency was its agent in this matter, and we agree. This Court determined in *Huppert v. Wolford*, 91 Idaho 249, 420 P.2d 11 (1966), that an agent of a foreign insurance company, who is empowered to take applications, countersign and deliver policies, collect and remit premiums, and transmit claims, was clothed with the apparent authority to bind the insurer on a parol contract of insurance. See also, *Collard v. Universal Automobile Ins. Co.*, 55 Idaho 560, 45 P.2d 288 (1935); *Young v. California Ins. Co.*, 55 Idaho 682, 46 P.2d 718, (1935). The ruling in *Huppert* was premised upon I.C. § 41–337:

**Resident agent, countersignature law.—** (1) Except as provided in section 41–338, Idaho Code, no authorized insurer shall make, write, place or cause to be made, written or placed, any policy or contract of insurance or indemnity of any kind or

character, or a general or floating policy covering risks on property located in Idaho, liability created by or accruing under the laws of this state, or undertakings to be performed in this state, *except through its resident insurance agents* licensed as provided in this code, *who shall countersign* or cause a facsimile of his signature to be placed on *all policies or indemnity contracts so issued,* and who shall keep a record of the same, containing the usual and customary information concerning the risk undertaken and the full premium paid or to be paid therefor, to the end that the state may receive the taxes required by law to be paid on premiums collected for insurance on property or undertakings located in this state.... (Emphasis added).

Although *Huppert* focused on the agent's power to make a parol contract binding against the insurer, the critical language focuses on the *apparent authority* of the agent who is authorized to countersign for a foreign insurer as an Idaho resident agent under I.C. § 41–337, and who is authorized to collect premiums and transmit claims. An insured must be able to rely on this apparent authority:

> Notice to the local agents of a foreign insurer is notice to the insurer and when third persons habitually deal with such agents they have the right to rely on the apparent authority of such agents to receive notice on behalf of the insurer.

3 Couch on Insurance 2d § 26:149 at 811 (2d ed. 1982).

Kootenai County rightly relied upon Quarles' apparent authority to receive and forward claims. Quarles engaged in all of the activities enumerated in *Huppert* that would cloak it with the apparent authority to process the County's claim. Foremost is estopped from denying responsibility for any errors committed by Quarles Agency, as notice to the agent is imputed to the principal. *State ex rel. Kidwell v. Master Distributors, Inc.,* 101 Idaho 447, 615 P.2d 116 (1980).

In fact, it is questionable whether Foremost is correct in asserting that Quarles erred in sending notice to Miller & Morris instead of Superior Underwriters. The Foremost policy is an occurrence policy and covers any incidents that occur during the policy term. The occurrence in this case was the improper execution sale which occurred on December 17, 1975, which insured occurrence took place in the middle of the term of the first Foremost policy. Since the first policy required that notice of occurrence be given to Miller & Morris of any incident occurring within the term of *that* policy, Quarles was technically correct in notifying Miller & Morris. By the terms of the second policy, notification of occurrences must be sent to Superior Underwriters only for incidents occurring between May 12, 1976, and May 12, 1977.

Kootenai County continued to send notice of all correspondence and court proceedings to Quarles. In January 1980, the Tribers filed an amended complaint seeking damages against Sheriff Fladwed. Foremost did not receive notice of this action until November 1980, and the scheduled trial date was November 12, 1980. However, the County requested a continuance of the trial until February 1981 for the purpose of notifying all insurers. Foremost contends that the notice of the February 1981 trial was not timely and that therefore the condition precedent to coverage of timely notification was not met, thereby entitling it to deny coverage. Foremost's argument is not well taken. Had Foremost assumed the defense when it should have, the problem never would have arisen because it would have been involved in each subsequent development as it occurred.

It is clear that there was substantial performance of the policy notice requirements by Kootenai County. Furthermore, Foremost's failure to defend Sheriff Fladwed is a circumstance excusing strict compliance with the notice requirements of the policy as to the later developments. *Viani v. Aetna Ins. Co.,* 95 Idaho 22, 501 P.2d 706 (1972) (partially overruled on other grounds in *Sloviaczek v. Estate of Puckett,* 98 Idaho 371, 565 P.2d 564 (1977)).

## II.

### THE CLAIM AGAINST THE WESTERN CASUALTY AND SURETY

■ The Western policy is a comprehensive "General Liability" policy with an attached "Errors Or Omissions Liability Insurance" rider. The policy term was from May 12, 1975, through May 12, 1976. Western's requirements in the event of a claim, occurrence or suit were identical to the standard form clause noted above in Foremost's policy. The "Errors or Omissions" clause establishes that the sheriff's improper execution sale was an occurrence within the coverage of Western's policy:

> The company further agrees to pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages on account of any claim made against the insured and caused by any negligent act, error or omission of the insured or any other person for whose acts the insured is legally liable which occurs during the policy period. The company shall have the right and duty to defend any suit against the insured seeking damages on account of such negligent act, error or omission even if any of the allegations of the suit are groundless, false or fraudulent and may make such investigation or settlement of any claim or suit as it deems expedient, but the company shall not be obligated to pay any claim or judgment or defend any suit after the applicable limit stated in this endorsement has been exhausted by payment of judgments or settlements.

Quarles Agency forwarded notification of the complaint filed against Sheriff Fladwed to Western's claims manager, Mr. Milton Beck, on July 22, 1976. There is no contention that Quarles was not a proper agent of Western in this matter, nor is there any claim that Quarles was negligent in the manner in which he notified Western of the *Nixon v. Triber* litigation.

Western's duty to defend Sheriff Fladwed was triggered in the same fashion as Foremost's duty to defend, and the above analysis under Part I herein applies equally to Western. Western clearly owed the sheriff a duty to defend.

Western also argues that, unlike all other potentially involved insurers, it never received any notice whatsoever of the Tribers' Amended Complaint for damages against the sheriff (filed in January 1980). Western claims that, in fact, it never received any notice of the trial scheduled for November 12, 1980, nor of its continuation until February, 1981.

Since Western's duty to defend was triggered by the original *Nixon v. Triber* litigation, we see no validity in Western's claim. Western maintained frequent correspondence with the Kootenai County Attorney's Office throughout the protracted proceedings. Although fully aware of the occurrence in question and the claims and losses against Sheriff Fladwed, Western failed to actively participate in either the handling of the claims or the defense of the case. The fact that Western monitored the development of litigation against Sheriff Fladwed indicates that Western should have been alerted to the evolving claim for damages against the sheriff, and placed Western on notice of its duty to defend.

Finally, Western argues that its policy was for general liability and, therefore, the more specific coverage policies of Foremost and Lloyd's should provide coverage before Western's general policy comes into play, and that since the policy limits of the other policies are greater than the amount of the subject claim, that the Western policy affords no coverage. Western further argues that its policy language does not cover this loss in any event. We do not reach those issues at this time since they have not yet been litigated and ruled upon in the trial court.

## III.

### THE CLAIM AGAINST UNDERWRITERS AT LLOYD'S, LONDON

■ The Lloyd's policy is an occurrence policy covering the period from May 12, 1976, through May 12, 1977. Sheriff Fladwed's improper execution sale oc-

curred on December 17, 1975, prior to the commencement of the Lloyd's policy term. The sheriff's deed was delivered on June 17, 1976, after the policy term had begun.

Kootenai County contends that the execution sale and the issuance of the sheriff's deed after the running of the redemption period must be viewed as one integrated, event or occurrence or, in other words, that the sheriff was negligent in conducting the improper execution sale and issuing his sheriff's deed. We do not agree. Idaho Code § 11–303 deals solely with "a sale without notice," which in this case occurred on December 17, 1976. The sheriff has no control over the running of the redemption period, which is statutorily mandated by § 11–403 to run six months after the execution sale is conducted. In *Nixon v. Triber* this Court determined that the only wrongful act was the sheriff's sale undertaken without the proper notices being given. In short, the sheriff is statutorily compelled to issue his sheriff's deed once the redemption period has expired, and the issuance of the deed is a mere ministerial act which is in no manner negligent. See I.C. § 11–403.

The improper execution sale is not an event covered by the Lloyd's policy since it occurred almost six months prior to the effective date of the policy. An insurer is not liable "for claims arising out of an event or accident which occurred prior to the effective date of the insurance coverage, even though damages and claims continued to accrue from this cause during the later period of coverage." *Appalachian Ins. Co. v. Liberty Mutual Ins. Corp.*, 507 F.Supp. 59, 62 (W.D.Pa.1981) (aff'd, 676 F.2d 56 (3d Cir.1982).)

## IV.

### THE CLAIM AGAINST QUARLES AGENCY

Kootenai County brought action against Quarles for breach of its duty of care as an insurance agent. Judge Prather determined that even if Quarles were negligent, the two-year statute of limitations for professional malpractice (I.C. § 5–219) began to run with the "allegedly negligent act of Mr. Quarles ... notifying Miller & Morris, Inc. instead of Superior Underwriters" back in July, 1976 and, thus, the County's claim was time barred.

Given the determination of this Court with regard to Quarles Agency's relationship to Foremost and Western, it is unnecessary for us to delve further into the issue of Quarles' professional malpractice, since we have ruled that, as between the plaintiffs and defendants in this action, Quarles properly gave notice to all insurers.

## V.

### IDAHO TORT CLAIMS ACT

The court below determined that Kootenai County was not "legally obligated" to pay the judgment entered against Sheriff Fladwed since the loss sustained did not come within the coverage of either the Foremost or Western policy. Judge Prather reasoned that since Kootenai County was the named insured under both the Foremost and Western policies, and since the judgment was entered solely against the sheriff, then the County was not legally obligated to pay a judgment against the sheriff. Both insurers' policies have specific language stating that they will only pay claims or judgments for which the named insured has become "legally obligated" to pay.

The reasoning of the court below is based upon the premise that the County was only liable for claims against it as a governmental entity as expressed under the 1971 version of the Idaho Tort Claims Act, I.C. § 6–901, *et seq.* It was not until the Tort Claims Act was amended in 1976 that a "governmental entity shall provide a defense to its employee and be responsible for the payment of any judgment ... against an employee." I.C. § 6–903(b). Since the loss resulting from Sheriff Fladwed's improper execution sale occurred on December 17, 1975—more than three full months prior to the 1976 amendment—Judge Prather determined that the County could not be legally liable for the judgment against the sheriff unless I.C. § 6–903(b) were applied retroactively.

Kootenai County obtained insurance coverage under both the Foremost and Western policies to protect its sheriffs from penalties such as those established by I.C. § 11–303. Kootenai County has every right to obtain insurance coverage for its employees in order to protect the integrity of their offices as well as any individuals who may come to any harm or loss due to the negligence of its officers operating in the course of their employment.

Since this action is based upon rights held and responsibilities due under an insurance contract, it is unnecessary to pursue the issue of the applicability of the Idaho Tort Claims Act. Kootenai County has sued upon its contractual rights as expressed within the confines of the applicable insurance policies. Foremost and Western ignored their contractual duties to defend Sheriff Fladwed and pay all damages that are covered under their respective policies. We therefore decline to address the applicability of the Idaho Tort Claims Act to this case.

## VI.

### SUMMARY

The orders of summary judgment of dismissal pertaining to respondents Foremost and Western are reversed and the case is remanded for proceedings consistent herewith; the orders of summary judgment of dismissal pertaining to respondents Lloyd's and Quarles are hereby affirmed.

Costs to appellant as against Foremost and Western together with attorney fees. Costs to Lloyd's and Quarles as against appellant with no attorney fees awarded.

SHEPARD, C.J., BAKES and BISTLINE, JJ., and BENGTSON, J., Pro Tem., concur.