23 P.3d 142

**CONSTRUCTION MANAGEMENT SYSTEMS, INC., an Idaho corporation, Plaintiff–Appellant,**

v.

**ASSURANCE COMPANY OF AMERICA, a New York corporation, Defendant–Respondent.**

No. 25927.

Supreme Court of Idaho.

April 30, 2001.

*v. State,* 133 Idaho 695, 992 P.2d 144 (1999); I.C.R. 57(b).

Hamilton, Michaelson & Hilty, Nampa, for appellant. Terry M. Michaelson argued.

Troy Y. Nelson, Spokane, WA, argued for respondent.

WALTERS, Justice.

This is an appeal by Construction Management Systems, Inc. (CMS) from a summary judgment in favor of Assurance Company of America (Assurance). The district court held that Assurance did not owe CMS a duty to defend against a claim of copyright infringement. We affirm.

## FACTUAL AND PROCEDURAL HISTORY

CMS designs and builds homes in the Treasure Valley. On March 4, 1998, CMS entered into a commercial general liability insurance agreement with Assurance covering a one-year period extending through March 4, 1999. Section one of the policy contains the grants of coverage, including Coverage B, which sets forth the requirements for the "advertising injury" liability section of the agreement:

### COVERAGE B—PERSONAL AND ADVERTISING INJURY LIABILITY

1. Insuring Agreement.

   a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal injury" or "advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal injury" or "advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" or offense and settle any claim or "suit" that may result. . . .

   b. This insurance applies to:

   . . . .

(2) "Advertising injury" caused by an offense committed in the course of advertising your goods, products or services....

Section V of the policy defines "advertising injury":

1. "Advertising injury" means injury arising out of one or more of the following offenses:

. . . .

(d) Infringement of copyright, title, or slogan.

On October 8, 1998, Woodside Homes, Inc. (Woodside) filed a complaint in United States District Court for the District of Idaho naming CMS as a defendant. Woodside asserted that CMS constructed four homes in Nampa, Idaho, based on architectural plans and technical drawings copyrighted by Woodside.

Shortly after receiving notice of the Woodside complaint, CMS contacted Assurance and requested that Assurance defend CMS pursuant to the "advertising injury" coverage of the policy. Assurance, however, declined to defend CMS in the suit, stating that "[f]or there to be coverage under the advertising injury section of the policy, it requires there to be a causal connection between the copyright material and use of that material for the purpose of advertising." A settlement agreement was later reached between CMS and Woodside in the copyright infringement action.

On May 13, 1999, CMS filed for a declaratory judgment, asserting that Assurance breached its duty to defend CMS in the copyright infringement litigation. Both parties moved for summary judgment and on September 1, 1999, the district court, holding that the Woodside complaint did not trigger Assurance's duty to defend under the policy, granted summary judgment in favor of Assurance. On appeal, CMS challenges the district court's holding.

## DISCUSSION

### A. Standard of Review

This Court's review of a district court's decision on a motion for summary judgment is the same as that required of the district court when originally ruling on the motion. *See East Lizard Butte Water Corp. v. Howell,* 122 Idaho 679, 681, 837 P.2d 805, 807 (1992). Summary judgment must be granted when "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." I.R.C.P. 56(c); *see also Friel v. Boise City Housing Authority,* 126 Idaho 484, 485, 887 P.2d 29, 30 (1994). On review, as when the motion is initially considered by the district court, this Court liberally construes the record in the light most favorable to the party opposing the motion, drawing all reasonable inferences and conclusions in that party's favor. *See Friel,* 126 Idaho at 485, 887 P.2d at 30 (citing *Farm Credit Bank of Spokane v. Stevenson,* 125 Idaho 270, 272, 869 P.2d 1365, 1367 (1994); *Harris v. Dept. of Health and Welfare,* 123 Idaho 295, 298, 847 P.2d 1156, 1159 (1992)). However, if the evidence reveals no disputed issues of material fact, only a question of law remains, and this Court exercises free review. *See Hines v. Hines,* 129 Idaho 847, 850, 934 P.2d 20, 23 (1997).

### B. Assurance's Duty to Defend Under the CMS Policy

On appeal, CMS argues that the district court erred in holding that Assurance did not owe a duty to defend because Woodside's complaint revealed a potential for liability for advertising injury arising out of copyright infringement. Even after reading Woodside's complaint broadly, we conclude that the complaint does not present a potential for liability. Accordingly, we hold that Assurance did not have a duty to defend CMS in the copyright infringement action.

An insurer's duty to defend arises upon the filing of a complaint whose allegations, in whole or in part, read broadly, reveal a potential for liability that would be covered by the insured's policy. *See Kootenai County v. Western Cas. & Sur.,* 113 Idaho 908, 910, 750 P.2d 87, 89 (1988); *State of Idaho v. Bunker Hill Co. .,* 647 F.Supp. 1064, 1068 (D.Idaho 1986). The duty to defend exists so long as there is a genuine

dispute over facts bearing on coverage under the policy or over the application of the policy's language to the facts. *See Black v. Fireman's Fund American Ins.*, 115 Idaho 449, 455, 767 P.2d 824 (Ct.App.1989). Where there is doubt as to whether a theory of recovery within the policy coverage has been pled in the underlying complaint, or which may be included in the underlying complaint, the insurer must defend regardless of possible defenses arising under the policy or potential defenses arising under substantive law governing the claim against the insured. *See Kootenai County*, 113 Idaho at 910, 750 P.2d at 89. An insurer seeking to establish that it has no duty to defend confronts a difficult burden since, at this stage, any doubts as to coverage must be resolved in favor of the insured. *See Continental Cas. Co. v. Brady*, 127 Idaho 830, 833, 907 P.2d 807, 810 (1995).

■ CMS argues that if the Woodside complaint is read broadly, there is a sufficient connection between the copyright infringement claim and CMS's advertising activities. CMS asserts that part of the injury alleged by Woodside's copyright infringement complaint was that the public would confuse Woodside's homes with those built by CMS. It contends that building the homes, placing them on the market, and having real estate brokers promote them is sufficient to give rise to the potential that copyright infringement activities were related to or connected with advertising.

The policy in this case states that Assurance will provide commercial general liability insurance to CMS. The policy includes coverage for "advertising injury." Assurance thus agrees to pay those sums that CMS becomes obligated to pay because of advertising injury. The policy also states that Assurance will have no duty to defend CMS against any "suit" seeking damages for "advertising injury" to which the policy does not apply. The policy defines "advertising injury" as injury arising out of "infringement of copyright, title, or slogan." The policy's coverage, however, only applies to advertising injury "caused by an offense committed in the course of advertising ... goods, products or services." It therefore restricts the scope of

the coverage by stating that the policy only applies to copyright infringement arising in the course of advertising.

In order to base its claim for coverage on advertising, CMS must take the difficult stance that Assurance's policy does not require a causal connection between "advertising activities" and "advertising injury." Instead, according to CMS, there is coverage if any connection, however remote, exists between the advertisement of the houses and the practices that harmed Woodside, even if the advertisements themselves did not cause the harm.

This argument has not met with much favor in other jurisdictions. *See Simply Fresh Fruit, Inc. v. Continental Ins. Co.*, 94 F.3d 1219, (9th Cir.1996) (applying California law); *Iolab Corp. v. Seaboard Sur. Co.*, 15 F.3d 1500 (9th Cir.1994) (applying California law); *Lazzara Oil Co. v. Columbia Casualty Co.*, 683 F.Supp. 777, 780 (M.D.Fla.1988); *Bank of the West v. Superior Court*, 2 Cal.4th 1254, 10 Cal.Rptr.2d 538, 833 P.2d 545 (1992); *Meyers & Sons Corp. v. Zurich American Ins.*, 74 N.Y.2d 298, 546 N.Y.S.2d 818, 545 N.E.2d 1206 (1989). Even where a claim is for conduct specified in the definition of advertising injury, courts have consistently held that there must be a connection between the injury alleged in the underlying complaint and the insured's advertising activity. *See Iolab Corp.*, 15 F.3d at 1505; *Simply Fresh Fruit*, 94 F.3d at 1223 ("[T]he *advertising activities* must *cause* the injury—not merely expose it.") (emphasis in original). Because Woodside's claim of infringement, even when read broadly, is based upon the construction of the homes rather than their advertisement, we hold that Assurance did not have a duty to defend CMS in the copyright litigation.

Additionally, even if the evidence that real estate brokers advertised the copyrighted homes is taken into consideration, the advertising injury coverage in the CMS policy does not apply to the copyright infringement alleged in the Woodside complaint. Although it has long been established that persons who advertise an infringing work can be held liable as contributory infringers, *see, e.g., Screen Gems–Columbia Music, Inc. v.*

*Mark–Fi Records, Inc.*, 256 F.Supp. 399 (S.D.N.Y.1966), CMS allegedly infringed upon Woodside's architectural work and technical drawings and there is nothing in the record to suggest that CMS advertised their infringing drawings to the public.

CMS also argues that an insurer must look beyond the words of the complaint to the underlying allegations to determine if a possibility of coverage exists. It contends that because Idaho is a notice pleading state (and therefore only requires a concise statement of the facts constituting the cause of action and a demand for relief,[1]) the complaint must be read broadly to determine if a potential basis for coverage exists. In support of its proposition, CMS cites two federal circuit court of appeals cases. *See Avondale Industries, Inc. v. Travelers Indem. Co.*, 887 F.2d 1200 (2d Cir.1989); *Pacific Indem. Co. v. Linn*, 766 F.2d 754 (3d Cir.1985). These cases, similar to our decision in *Kootenai County v. Western Cas. & Sur.*, hold that the duty to defend arises upon the filing of a complaint whose allegations, in whole or in part, read broadly, reveal a potential for liability that would be covered by the insured's policy. *See Avondale Industries*, 887 F.2d at 1204 ("The duty to defend rests solely on whether the complaint in the underlying action contains any allegations that arguably or potentially bring the action within the protection purchased.") (applying New York law); *Pacific Indem. Co.*, 766 F.2d at 760 ("[A]n insurance company is obligated to defend an insured whenever the complaint filed by the injured party may potentially come within the policy's coverage.") (applying Pennsylvania law).

These cases, however, also indicate that the insurer may not be required to defend if it can establish that the exclusion contained in the policy is clear and unambiguous. For example, in *Pacific Indem. Co.*, the court noted that "[e]xclusions from coverage contained in an insurance policy will be effective against an insured if they are clearly worded and conspicuously displayed. . . ." 766 F.2d at 761; *see also Avondale*, 887 F.2d at 1205 (" 'Before an insurance company is permitted to avoid policy coverage, it must . . . establish[ ] that the exclusions or exemptions apply in the particular case, and that they are subject to no other reasonable interpretation.' ") (citation omitted).

In this case, CMS's policy unambiguously states that the coverage only applies to injuries that occur in the "course of advertising." Thus, even read broadly, there can be no doubt as to whether a theory of recovery within the CMS policy was potentially pled in the Woodside complaint. The complaint does not suggest that CMS violated Woodside's copyright through advertising. Rather, the gravamen of Woodside's complaint is that CMS used the copyrighted plans and drawings to construct houses. There appears no allegation that the copyrighted plans and drawings were used to advertise the homes, nor any suggestion that advertisements or other promotional literature contributed in any way to the infringement of Woodside's copyright. Indeed, the only reference to advertising found in the complaint is a reference to "marketing" found in the prayer for relief.[2] This reference, however, does not suggest that an "advertising injury" was alleged in the Woodside complaint. Neither does it imply that advertising activities in any way caused the harm. Additionally, the prayer does not request that CMS be enjoined from continuing to market or otherwise advertise the houses. Because the underlying complaint does not allege an advertising injury and the language of the policy unambiguously states that the injury must occur in the "course of advertising," we conclude that the complaint does not reveal the potential for liability.

## CONCLUSION

For the above reasons, we affirm the district court's summary judgment in favor of

---

1. *See* I.R.C.P. 8(a); *Clark v. Olsen*, 110 Idaho 323, 325, 715 P.2d 993, 995 (1986).

2. The prayer for relief states as follows:
   a. That [CMS], [its] principals, directors, officers, agents, employees and representatives be enjoined permanently from infringing in any manner [Woodside's] copyright in the architectural work, "The Belmont," and from reproducing, publishing, distributing, making derivative works, constructing, selling, marketing or otherwise benefiting in any way from [Woodside's] copyrighted work.

Assurance. Costs, but not attorney fees are granted to the Respondents pursuant to Idaho Appellate Rule 40.

Chief Justice TROUT and Justices SCHROEDER, KIDWELL and EISMANN, concur.