48 P.3d 1256

Richard W. HOYLE, for himself and as an employee for First Security Insurance, Inc., d/b/a Hoyle Insurance, and Hoyle & Associates Insurance, Inc., an Idaho corporation, now known as Winston Incorporated Network, d/b/a Wincorp, Plaintiffs–Appellants,

v.

UTICA MUTUAL INSURANCE COMPANY, a New York corporation, and Employers Reinsurance Corporation, a Missouri corporation, Defendants–Respondents.

No. 27142.

Supreme Court of Idaho,
Boise, February 2002 Term.

June 6, 2002.

Reed & Giesa, P.S., Spokane; Goicoechea Law Offices, Chtd., Boise, for appellants. John P. Giesa argued.

Brassey, Wetherell, Crawford & McCurdy, Boise; Paine, Hamblen, Coffin, Brooke & Miller, Coeur d'Alene; Arnall, Golden & Gregory, LLP, Atlanta, for respondents. Robert T. Wetherell for Utica Mutual Insurance Company and Scott F. Bertschi for Employers Reinsurance Corporation, argued.

TROUT, Chief Justice.

Richard W. Hoyle ("Hoyle") and Hoyle & Associates Insurance, Inc. ("HAII") appeal the district judge's order granting summary judgment in favor of Utica Mutual Insurance Company ("Utica") and Employers Reinsurance Corporation ("ERC").

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

HAII is an insurance agency/brokerage firm formed by Hoyle in 1979. On January 1, 1996, HAII entered into an Asset Purchase Agreement with First Security Insurance, Inc. ("FSI") whereby FSI agreed to acquire substantially all of the assets of HAII. Under the Asset Purchase Agreement, FSI essentially operated the insurance agency previously known as HAII, although HAII remained a separate and distinct corporate entity owned by Hoyle. As a condition precedent to the execution of the Asset Purchase Agreement, FSI executed an Employment Agreement with Hoyle, agreeing to employ Hoyle as an executive management level employee to supervise the sales activities of the Boise, Idaho office. Hoyle remained in that position until his employment was terminated by FSI on June 5, 1997.

On July 1, 1990, HAII purchased an insurance policy from Utica. The Utica policy was in effect from July 1, 1990, through June 30, 1996, and subsequently extended to August 30, 1999. HAII is the named insured under the Utica policy, and pursuant to Section III of the policy, Hoyle was also insured under the policy as the sole shareholder, president and director of HAII. ERC issued an insurance policy to FSI for the period of January 20, 1996, to January 20, 1997. The policy was renewed to cover until January 20, 1999. Hoyle was insured under the policy as an employee of FSI.

In May of 1997, the Idaho Department of Insurance and the Idaho Attorney General's office had served a search warrant on FSI alleging that Hoyle had committed crimes of racketeering, insurance fraud, forgery, criminal solicitation, and misappropriation of premium funds. As a result of the search warrant, the insurance agency was shut down for a period of time as investigators searched and seized files and documents.

On June 13, 1997, Hoyle was criminally indicted by an Ada County grand jury in the District Court of the Fourth Judicial District of the State of Idaho. The indictment alleged Hoyle committed at least 141 criminal acts while serving as an insurance broker for HAII and later for FSI.

On June 16, 1997, FSI filed a civil action in Ada County against Hoyle and HAII seeking damages as a result of Hoyle's alleged fraudulent and criminal conduct. FSI filed an amended complaint against Hoyle and then filed a second amended complaint. In this complaint, FSI sought compensatory damages, indemnification, attorney's fees and costs. The general allegations of this complaint assert that Hoyle and HAII misrepresented and violated the terms of the Asset Purchase Agreement and the Employment Agreement entered between FSI and Hoyle. Nowhere in the complaint does FSI expressly allege negligence.

Shortly after suit was instituted, Hoyle and HAII tendered the defense of both the criminal and FSI civil suit to ERC by letter. On July 31, 1997, ERC denied coverage and denied a duty to defend and indemnify.

On June 8, 1998, Hoyle and HAII tendered defense of the FSI civil suit to Utica. On October 19, 1998, Utica denied coverage and denied a duty to defend and indemnify.

On May 19, 1999, Hoyle and HAII filed this action against Utica and ERC seeking a declaratory judgment that ERC has a duty to defend the criminal suit, and both Utica and ERC have a duty to defend and indemnify the civil suit, as well as asserting claims for breach of contract and breach of the duty of good faith and fair dealing arising out of Utica and ERC's failure to defend these lawsuits.

ERC and Utica filed motions for judgment on the pleadings pursuant to I.R.C.P. 12(c) and Hoyle and HAII filed motions for summary judgment against Utica and ERC. Utica's motion came before the court first, and the district court, utilizing the summary judgment standard, held Utica did not have a duty to defend Hoyle or HAII. ERC's motion then came before the court, and the district court granted ERC's motion with respect to the duty to defend. Later, the district court granted ERC's motion with respect to the duty to indemnify. Hoyle and HAII now appeal those decisions.

## II.

### STANDARD OF REVIEW

With respect to Utica and ERC's motions for judgment on the pleadings, the district judge treated them as motions for summary judgment because matters outside the pleadings were referred to. Idaho Rule of Civil Procedure 12(c), with respect to motions for judgment on the pleadings states:

> After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings. If on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

■ Because matters outside the pleadings were considered in ruling on Utica and ERC's motions, this Court will review the district judge's decisions under the summary judgment standard.

■ On appeal from the grant of a motion for summary judgment, this Court employs the same standard as used by the district court originally ruling on the motion. *Mutual of Enumclaw Ins. Co. v. Pedersen,* 133 Idaho 135, 138, 983 P.2d 208, 211 (1999); *McKay v. Owens,* 130 Idaho 148, 152, 937 P.2d 1222, 1226 (1997). Summary judgment is proper "if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." I.R.C.P. 56(c). This Court liberally construes all disputed facts in favor of the non-moving party, and draws all reasonable inferences and conclusions supported by the record in favor of the party opposing the motion. *Wensman v. Farmers Insur. Co. of Idaho,* 134 Idaho 148, 151, 997 P.2d 609, 612 (2000). If reasonable people could reach different conclusions or draw conflicting inferences from the evidence, the motion must be denied. *Id.* However, if the evidence reveals no disputed issues of material fact, only a question of law remains, and this Court exercises free review. *Sun Valley Potatoes, Inc. v. Rosholt, Robertson, & Tucker, Chtd.,* 133 Idaho 1, 4, 981 P.2d 236, 239 (1999).

## III.

### DISCUSSION

■ As an initial matter, Hoyle and HAII contend Utica and ERC were required to file a declaratory judgment action if they were not going to defend, citing *Kootenai County v. Western Casualty and Surety Co.,* 113 Idaho 908, 750 P.2d 87 (1988). In *Kootenai County,* this Court discussed when an insurer must determine its potential for liability and duty to defend:

> [I]f the insurer believes that the policy itself provides a basis, i.e., an exclusion for noncoverage, it may seek declaratory relief. However, this does not abrogate the necessity of defending the lawsuit until a determination of noncoverage is made. The insurer should not be allowed to "guess wrong" as to the potential for coverage. "[T]he provision for defense of suits is useless and meaningless unless it is offered when the suit arises." 7 C.J. Appleman, *Insurance Law and Practice* § 4684 at 83 (Berdal ed.1979).

*Kootenai County,* 113 Idaho at 910–911, 750 P.2d at 89–90. This language, while admittedly broad, does not require an insurance company to file a declaratory judgment action in every instance, even though it believes there is no potential for coverage, and then tender a defense until the lack of coverage is established. The operative language from *Kootenai County* is "may" file such an action. However, as *Kootenai County* emphasizes, the insurance company acts at its own peril if it chooses not to defend a case and it is later determined that the insurance company did, in fact, have such a responsibility.

### A. Duty to Defend

■ This Court has previously articulated the rule regarding an insurer's duty to defend. The duty to defend arises upon the filing of a complaint whose allegations, in

whole or in part, read broadly, reveal a potential for liability that would be covered by the insured's policy. *Constr. Mgmt. Sys., Inc. v. Assurance Co. of Am.,* 135 Idaho 680, 682, 23 P.3d 142, 144 (2001); *Union Warehouse & Supply Co., Inc. v. Illinois R.B. Jones, Inc.,* 128 Idaho 660, 667, 917 P.2d 1300, 1307 (1996); *Kootenai County v. W. Cas. and Sur. Co.,* 113 Idaho 908, 910, 750 P.2d 87, 89 (1988) (citing *State of Idaho v. Bunker Hill Co.,* 647 F.Supp. 1064, 1068 (D.Idaho 1986)). How and when an insurer must determine its potential for liability and duty to defend has also been established:

> The problem that faces the insurers when a claim is made is determining if there is a potential for liability. However, ... since the advent of notice pleading there will likely be broad ambiguous claims made against the insured making it more difficult for the insurer to determine whether the insurance policy covers the claims.... [W]here there is doubt as to whether a theory of recovery within the policy coverage has been pleaded in the underlying complaint, or which is potentially included in the underlying complaint, the insurer must defend regardless of potential defenses arising under the policy or potential defenses arising under the substantive law under which the claim is brought against the insured. It is a misconception of the duty to defend, however, if the insurer refuses to defend and seeks a determination of the duty while the underlying case progresses against the insured, and then if found obligated under its duty, the insurer merely steps in and defends and pays defense fees that have accumulated. The proper procedure for the insurer to take is to evaluate the claims and determine whether an arguable potential exists for a claim covered by the policy; if so, then the insurer must immediately step in and defend the suit.

*Kootenai County,* 113 Idaho at 910–911, 750 P.2d at 89–90.

### 1. The FSI Civil Suit

█ Hoyle and HAII raise the same arguments regarding the Utica and ERC policies. The relevant coverage provision under the Utica policy is found in Section VI, regarding exclusions. Exclusion 1 to the Utica Policy excludes from coverage those acts arising out of "[a]ny dishonest, fraudulent, malicious, or criminal conduct committed or alleged to have been committed by or at the direction of the insured." The policy continues,

> [i]f a suit is brought against the insured alleging both negligent acts, error, or omissions for a claim within the coverage of the policy and dishonest, fraudulent, malicious, or criminal conduct, then we will defend the insured in the trial court, but we shall not have any liability for any judgment for dishonest, fraudulent, malicious, or criminal conduct nor shall we have any further obligation to defend after judgment in the trial court.

The relevant ERC policy coverage provision is found in Section I of the policy, which reads:

> COVERAGE. The Corporation [ERC] does hereby agree to pay on behalf of the Insured such loss in excess of the applicable deductible stated and within the limit of liability specified in the Declarations sustained by the Insured by reason of liability imposed by law for damages caused by:
>
> (a) any negligent act, error or omission of the Insured or any person for whose acts the Insured is legally liable, or
>
> (b) any claim for libel or slander or invasion of privacy against the Insured ...

Thus, under Idaho law and both policies, if the FSI complaint reveals any potential liability for negligent conduct, such allegations trigger Utica and ERC's duty to defend.

The FSI Complaint makes no express claim for negligence. Hoyle and HAII argue that a broad reading of the FSI complaint reveals a potential claim for negligence, evidenced by the use of the words "including but not limited to" and the allegations including breach of the implied covenant of good faith and fair dealing, breach of fiduciary duty, violations of statutory duties, implied contract, and conversion.

These arguments are unpersuasive. Every claim in the FSI complaint alleges the acts in question were committed in a "fraudulent, improper and illegal" manner. Despite this, Hoyle and HAII go on to argue that the word "improper" includes negligence. This is also unpersuasive because in every instance it is used, it is paired with the term "fraudulent." Also, the term "improper" is in no way synonymous with the word "negligent." Hoyle and HAII argue Idaho law, namely *Kootenai County*, requires the complaint to be read in whole *or in part*, and the district court failed to follow the latter part of this disjunctive rule. While *Kootenai County* does require the Complaint to be read in whole or in part, there are no parts of the complaint that reveal any potential claims for negligence. The use of the terms "improper", "illegal", "inconsistent with general industry standards", and "including but not limited to", read in part, are still insufficient to find a claim of negligence.

Hoyle and HAII also point to paragraph 71 of the FSI complaint, citing the language which alleges numerous "failures" to take certain actions. While this language sounds similar to that of a claim for negligence, this "failure" language clearly comes under a claim for breach of contract, in which Hoyle and HAII breached the contract by their failure to act.

■■■■■■ Hoyle and HAII assert the claims for implied covenant of good faith and fair dealing and the breach of a fiduciary duty encompass negligence. An implied covenant of good faith and fair dealing claim sounds in contract. When an errors and omissions policy, such as the policy in the instant case, excludes intentional acts from coverage, an intentional breach of the covenant of good faith and fair dealing claim, as alleged by FSI, does not give rise to the duty to defend. *See Intermountain Gas Co. v. Industrial Indem. Co.*, 125 Idaho 182, 186, 868 P.2d 510, 514 (Ct.App.1994). Furthermore, although the breach of a fiduciary duty sounds in tort, and can be actionable for either intentional or negligent breaches of such duties, it is clear from the complaint that FSI is not alleging the breach of these duties were committed in a negligent manner. The complaint specifically alleges these duties were breached by "fraudulent, improper and illegal business activities and pursuits." Thus, FSI's claim for the intentional breach of the covenant of good faith and fair dealing and breach of fiduciary duty does not give rise to a duty to defend. *See Id.*

■■■■■■ Hoyle and HAII assert the facts behind FSI's pleading reveal negligent acts. Even if the facts behind the FSI complaint might disclose negligent acts, it is irrelevant. This Court has previously rejected this argument in *Construction Management v. Assurance Company of America*, 135 Idaho 680, 23 P.3d 142 (2001). Pursuant to *Construction Management*, an insurer does not have to look beyond the words of the complaint to determine if a possibility of coverage exists. *Id.* at 684, 23 P.3d at 146.

Hoyle and HAII raise a public policy argument, asserting the district judge's ruling creates bad public policy because it permits a professional's adversary to buy up all potential malpractice claims of the professional's clients, add them to a business dispute with the professional, and omit the magic word "negligence" from the pleadings, thereby depriving the professional of a vigorous insurance defense. We need not address this argument here, as there is no indication Utica or ERC had any control over FSI in drafting its complaint.

■■■■■■ Finally, Hoyle and HAII imply that because Utica has decided to defend Plaintiffs in another action, such decision is binding on Utica to defend the FSI suit. We find this argument unconvincing. Utica's decision to defend Hoyle in an unrelated suit is not dispositive of the duty to defend in this case. The complaint in the other suit may specifically allege negligent acts or claims triggering coverage under the Utica policy, allegations which are not present in this case.

We agree with the district judge that FSI's complaint contained only claims for fraudulent, improper and illegal acts, and therefore the coverage under the Utica and ERC policies does not give rise to a duty to defend.

**374**

### 2. *The Criminal charges*

Hoyle and HAII tendered defense of the criminal suit to ERC, but not to Utica. Pursuant to the express terms of the ERC policy, only

> loss[es] ... sustained by the Insured by reason of liability imposed by law for damages caused by: (a) any negligent act, error or omission of the Insured or any person for whose acts the Insured is legally liable ... arising out of the conduct of the business of the Insured in rendering services for others as a general insurance agent, insurance agent or insurance broker ...

are covered. The charges contained in the criminal indictment contain no allegations of or damages caused by any negligent acts, errors or omissions.

 In *Perzik v. St. Paul Fire & Marine Ins. Co.*, 228 Cal.App.3d 1273, 279 Cal.Rptr. 498 (1991), an insurer had no duty to defend and indemnify a physician who was indicted for illegally dispensing drugs. The *Perzik* court differentiated professional liability from criminal liability, noting that the damages in a criminal proceeding are restitutionary rather than compensatory in nature. *Id.* at FN1 (citing *Jaffe v. Cranford Ins. Co.*, 168 Cal.App.3d 930, 214 Cal.Rptr. 567 (1985) (stating in criminal proceedings, "[t]he defendant is asked to return something he wrongfully received; he is not asked to compensate the plaintiff for injury suffered as a result of his conduct.")). As in *Perzik*, any restitution the state may seek from Hoyle in the criminal action does not constitute damages caused by negligent acts, errors, or omissions, falling under the policy's coverage. Therefore, we conclude the criminal case against Hoyle is not a "suit for damages" covered under the ERC policy.

### B. Endorsement PAL–11 to the ERC policy

 Hoyle and HAII maintain ERC's duty is triggered by an amendment to the ERC policy. Section VI of the ERC policy, the exclusion section, specifically excludes coverage for any dishonest, fraudulent, criminal or malicious act. This section of the policy was subsequently amended by adding "Endorsement Serial No. PAL–11", which provides:

> IT IS AGREED that this policy is extended to cover dishonest, fraudulent, criminal or malicious acts committed by an employee of the Named Insured, and paragraph (a) of the section of this policy captioned "Exclusions", is hereby amended accordingly. The coverage provided by this Endorsement shall extend to the Named Insured and any Insured, provided that such Insured did not personally participate in or ratify the dishonest, fraudulent or criminal act.

The district court held that PAL–11 never comes into play because the general coverage grant, set forth in Section I of the policy and previously quoted in this opinion, is never triggered to begin with. Hoyle and HAII argue that the district judge's interpretation is in error because this endorsement operates to extend all benefits under the policy. This assertion is contrary to the express language of the endorsement: "paragraph (a) of the section of this policy captioned 'Exclusions', is hereby amended accordingly." PAL–11 extends coverage, but only by narrowing the exclusion; it does not operate to extend full coverage. Since the claims against Hoyle and HAII do not fall within the general coverage provisions, PAL–11 never comes into play.

Hoyle and HAII also argue that because negligence claims are already covered in the body of the policy, amending the PAL–11 endorsement to include claims for negligence renders PAL–11 illusory and meaningless. Contrary to this assertion, PAL–11 operates to protect innocent employers from claims arising as a result of the dishonest, fraudulent or criminal acts of their employees. Without this provision, claims for negligent hiring, supervision and retention (which are predicated upon an employee's fraudulent or criminal acts) would be excluded under the policy. The PAL–11 amendment simply clarifies that such claims are included under the policy.

Because the claims against Hoyle and HAII do not fall within the ERC policy pro-

visions, we uphold the decision of the district judge.

## C. Duty to Indemnify

Idaho has not yet addressed the issue of whether an insurer's duty to indemnify is ripe for adjudication prior to entry of judgment. However, other courts have recognized that the determination of whether an insurer has a duty to indemnify need not await the resolution of the underlying suit in situations where the determination has already been made that the insurer has no duty to defend. *See, e.g., United Nat'l Ins. Co. v. Dunbar & Sullivan Dredging Co.*, 953 F.2d 334, 338 (7th Cir.1992); *Capitol Indem. Corp. v. Miles*, 978 F.2d 437, 438 (8th Cir. 1992); *Compass Ins. Co. v. City of Littleton*, 984 P.2d 606, 621 (Colo.1999); *Superior Equip. Co., Inc. v. Maryland Cas. Co.*, 986 S.W.2d 477, 484–85 (Mo.Ct.App.1998); *American Policyholders' Ins. Co. v. Cumberland Cold Storage Co.*, 373 A.2d 247, 251, n. 2 (Me.1977). This principle is based on the premise that the duty to defend is broader than the duty to indemnify and where there is no duty to defend, there can be no duty to indemnify. *See, e.g., United Nat'l Ins. Co.*, 953 F.2d at 338.

▬▬▬▬ Under Idaho law and consistent with other states, an insurer's duties to defend and indemnify are separate duties. *City of Idaho Falls v. Home Indem. Co.*, 126 Idaho 604, 608, 888 P.2d 383, 387 (1995); *Hirst v. St. Paul Fire & Marine Ins. Co.*, 106 Idaho 792, 798, 683 P.2d 440, 446 (Ct.App. 1984). The duty to defend is broader than the duty to indemnify. *Black v. Fireman's Fund Am. Ins.*, 115 Idaho 449, 455, 767 P.2d

824, 830 (Ct.App.1988). The duty to defend is triggered if the third-party's complaint reveals a potential for liability that would be covered by the insured's policy. *City of Idaho Falls*, 126 Idaho at 608, 888 P.2d at ·387. Therefore, we hold that if a third-party's complaint, read broadly, reveals no potential liability for purposes of the duty to defend, there can be no duty to indemnify.

▬▬▬▬ Hoyle and HAII raise the concern that as this litigation unfolds, facts and issues outside the scope of FSI's complaint could arise that would trigger the duty to defend or indemnify. This concern is legitimate, as Idaho has adopted a system of notice pleading. *Cook v. Skyline Corp.*, 135 Idaho 26, 33, 13 P.3d 857, 864 (2000) (citation omitted); I.R.C.P. 8(a)(1).[1] Under notice pleading, "a party is no longer slavishly bound to stating particular theories in its pleadings." *Id.* (quoting *Dursteler v. Dursteler*, 108 Idaho 230, 697 P.2d 1244 (Ct.App. 1985), later proceeding, 112 Idaho 594, 733 P.2d 815 (Ct.App.1987)). Rather, a complaint need only state claims upon which relief may be granted. *Id.;* I.R.C.P. 8(a)(1). Additionally, Rule 15(b) of the Idaho Rules of Civil Procedure allows litigants to make a motion to amend pleadings to conform to the evidence.[2] Despite that, it makes little sense to require an insurer to defend a lawsuit simply because a complaint, with no covered claims, could potentially be amended to include covered claims. If this were true, an insurer would be required to defend every lawsuit regardless of the allegations. The better rule is that if there is a subsequent change in the pleadings, a duty to defend may arise and the issue of the duty to indem-

---

1. Notice pleading only requires a pleading "which sets forth a claim for relief ... a short and plain statement of the claim showing that the pleader is entitled to relief" in addition to alleging jurisdiction of the court and a demand for judgment. I.R.C.P. 8(a).

2. I.R.C.P. 15(b) provides:

 When issues not raised by the pleading[s] are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon

motion of any party at any time, even after judgment; but failure so to amend does not affect the result of the trial of these issues. If evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings, the court may allow the pleadings to be amended and shall do so freely when the presentation of the merits of the action will be subserved thereby and the objecting party fails to satisfy the court that the admission of such evidence would prejudice the party in maintaining the party's action or defense upon the merits. The court may grant a continuance to enable the objecting party to meet such evidence.

nify would likewise come before the court again. In the instant case, because there is no duty to defend at this present time, we conclude there is no duty to indemnify based upon the FSI complaint as it currently reads and the district judge properly concluded there is no duty to defend or indemnify. The Court, therefore, will not address the numerous other allegations raised by Utica and ERC as alternative grounds to uphold the district court.

### D. Attorney's fees on appeal

▇▇▇ Hoyle and HAII request attorney's fees on appeal pursuant to Idaho Code section 41–1839, which provides:

(1) Any insurer issuing any policy, certificate or contract of insurance, surety, guaranty or indemnity of any kind or nature whatsoever, which shall fail for a period of thirty (30) days after proof of loss has been furnished as provided in such policy, certificate or contract, to pay to the person entitled thereto the amount justly due under such policy, certificate or contract, shall in any action thereafter brought against the insurer in any court in this state for recovery under the terms of the policy, certificate or contract, pay such further amount as the court shall adjudge reasonable as attorney's fees in such action.

. . .

(4) Notwithstanding any other provision of statute to the contrary, this section and section 12–123, Idaho Code, shall provide the exclusive remedy for the award of statutory attorney's fees in all actions between insureds and insurers involving disputes arising under policies of insurance. Provided, attorney's fees may be awarded by the court when it finds, from the facts presented to it that a case was brought, pursued or defended frivolously, unreasonably or without foundation. Section 12–120, Idaho Code, shall not apply to any actions between insureds and insurers involving disputes arising under any policy of insurance.

Because Hoyle and HAII are not entitled to prevail in their action under the Utica and ERC policies, Hoyle and HAII are not entitled to an award of attorney's fees.

▇▇▇ Utica requests an award of fees under Idaho Code sections 41–1839 and 12–123. Pursuant to these sections, attorney's fees may be awarded when the Court finds, from the facts presented, that the case was brought, pursued or defended frivolously, unreasonably or without foundation. Utica argues Hoyle and HAII's claims are without merit and frivolous because FSI's complaint clearly lacks any allegations of negligence, and Hoyle and HAII are simply asking this Court to infer negligence and re-write the complaint. On the contrary, Hoyle and HAII's challenge to the interpretation of the Utica and ERC insurance policies, as well as the FSI complaint, is not frivolous as it was reasonable to question the interpretation of the policies and complaint to determine whether there was a potential for liability. Therefore, we decline to award Utica attorney's fees on appeal.

Idaho Appellate Rule 40(a) provides "[c]osts shall be allowed as a matter of course to the prevailing party unless otherwise provided by law or order of the Court." Because Utica and ERC are the prevailing parties, we award them costs.

### IV.

### CONCLUSION

The district judge properly granted summary judgment in favor of Utica and ERC. We award Utica and ERC costs, but not attorney's fees on appeal.

Justices SCHROEDER, WALTERS, KIDWELL and EISMANN concur.