# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 37861

COUNTY OF BOISE, a political
subdivision of the State of Idaho,

Plaintiff/Appellant,

v.

IDAHO COUNTIES RISK MANAGEMENT
PROGRAM, UNDERWRITERS (ICRMP),
and DOES I through X,

Defendant/Respondents.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Twin Falls, November 2011 Term

2011 Opinion No. 126

Filed: November 30, 2011

Stephen W. Kenyon, Clerk

Appeal from the District Court of the Fourth Judicial District of the State of Idaho, Ada County. Hon. Cheri C. Copsey, District Judge.

The Judgment of the district court is affirmed.

Brassey, Wetherell & Crawford, LLP, Boise, for appellant. Robert T. Wetherell argued.

Anderson, Julian & Hull, Boise, for respondents. Phillip J. Collaer argued.

_____

J. JONES, Justice.

This is an insurance coverage dispute between the County of Boise (the County) and its insurer, Idaho Counties Risk Management Program (ICRMP). ICRMP refused to defend the County in Fair Housing Act (FHA) litigation in federal court, which the County claimed breached its insurance agreement. The district court determined the FHA claims against the County were excluded from the policy and granted summary judgment to ICRMP. We affirm the district court.

## I.
## BACKGROUND

Alamar Ranch, LLC (Alamar) sued the County in federal court in January 2008, alleging the County violated the FHA. At the time, the County had a Public Entity Multi-Lines Insurance

1

Policy (the Policy) with ICRMP, which included errors and omissions coverage.[1] The County timely notified ICRMP of Alamar's FHA claims. ICRMP declined to defend the County because ICRMP determined that Alamar's claims were beyond the scope of the Policy's coverage. Alamar's complaint alleged[2]:

4. This case arises out of Boise County's violations of the Fair Housing Act, 42 U.S.C. § 3601 *et seq.* ("FHA"). . . .

6. On April 19, 2007, Alamar submitted an application to the [County's Planning and Zoning Commission (P & Z)] requesting a Conditional Use Permit ("CUP") allowing Alamar to operate a 72-bed [residential treatment facility (RTC)] and private school on [its] Property. . . . Alamar was required to apply for a CUP because the RTC is identified by Boise County as a use to be reviewed by Boise County under the conditional use process. The question under the CUP process, however, is not whether this proposed use should be allowed (it is an allowed use) but whether conditions of approval are warranted to ensure that such use does not "cause any damage, hazard, nuisance or other detriment to persons, property, or natural resources in the vicinity."

7. On August 2, 2007, Alamar presented its application to the P & Z during a public hearing. . . . On August 15, 2007, the P & Z once again convened to request responses from both Alamar as well as members of the public opposed to the application. . . .

10. Although Alamar satisfied its burden of demonstrating at the hearing that Alamar's project satisfied each of the nine standards in the Boise County Zoning and Development Ordinance ("BCZDO") for issuance of a CUP, the application was denied by vote of the P & Z commissioners at the conclusion of the August 15, 2007 hearing (the P & Z arrived at a 3-3 tie vote on the motion, which Boise County deemed a denial of the application).

11. On September 28, 2007, the P & Z issued a written decision denying Alamar's application. Because there was no basis within the CUP standards to deny the application, the P & Z commissioners, as a pretext, manufactured the following reasons for the denial of the application . . . . Neither rationale is among those listed in the BCZDO for denial of a CUP.

12. On October 18, 2007, Alamar timely filed a notice of appeal of the P & Z's

---

[1] The term of the policy was from October 1, 2008 to October 1, 2009, but it had a retroactive term for errors and omissions coverage, dating to November 29, 1985.

[2] This opinion retains the paragraph numbering and emphasis that appears in Alamar's complaint and in the various provisions of the Policy.

decision to the Boise County Board of Commissioners ("Board"). In its appeal, Alamar informed Boise County that it had a duty under the FHA to approve the CUP and allow the project to be built so that housing could be made available for the "handicapped" youth that Alamar proposed to serve. . . .

13. The Board heard the appeal at a public hearing held on January 28, 2008. . . .

14. The Board deliberated (on the record) on March 10, 2008. The Board, knowing that it could not issue an absolute denial of the application, instead reversed the denial of the application. In doing so, however, it carried out its discriminatory purpose of preventing the project from being built by knowingly imposing numerous conditions on the CUP that individually or cumulatively made the proposed use of the property impossible. In essence, the conditions were a pretext designed to conceal the Board's discriminatory motive of preventing the project from being built.

15. On April 21, 2008, the Board entered a written decision and order delineating several onerous, arbitrary and discriminatory conditions for the permit. . . .

25. Boise County refused to make the necessary accommodation [for handicapped individuals] by placing onerous, arbitrary and unreasonable conditions on the approval of the application which destroyed the feasibility of the project. . . .

30. Upon information and belief, Boise County has approved other developments without such conditions.

31. Upon information and belief, a discriminatory reason more likely than not motivated the challenged decision of Boise County. . . .

36. Boise County unlawfully interfered with the exercise of [FHA] rights by obstructing the construction or availability of housing for individuals protected under the FHA. . . .

38. Pursuant to 42 U.S.C. § 3613(c), Alamar requests punitive damages.

The Policy had, in its General Conditions, a statement regarding ICRMP's duty to defend the County:

> **Defense of Claims or Suit.** We may investigate or settle any covered *claim* or *suit* against you. We will provide a defense with counsel of our choice, at our expense, if you are sued for a covered *claim*.

Section IV of the Policy, the errors and omissions section, provided:

We agree, subject to the terms and conditions of this Coverage, to pay on your behalf all sums which you shall become legally obligated to pay as ***damages*** because of any ***claim*** which is ***first made*** against you during this Policy Period, arising out of any ***wrongful act*** by you.

The Policy defined "wrongful act" as used in the errors and omissions section:

**"Wrongful Act"** means the negligent performance of or failure to perform a legal duty or responsibility in a tortious manner pursuant to the Idaho Tort Claims Act or be [sic] premised upon allegations of unlawful violation of civil rights pursuant to Federal law arising out of public office or position.

The Policy also contained numerous exclusions specifically applicable to the errors and omissions section:

The Errors and Omissions Insuring Agreement does not cover any ***claim***: . . .

2. Arising out of any dishonest, fraudulent, criminal, malicious, deliberate or intended ***wrongful act*** committed by you or at your direction. . . .

4. Resulting from a ***wrongful act*** intended or expected from the standpoint of any ***insured*** to cause ***damages***. This exclusion applies even if the ***damages*** claimed are of a different kind or degree than that intended or expected. . . .

12. To any ***claim*** of liability arising out of or in any way connected with the operation of the principles of eminent domain, condemnation proceedings, inverse condemnation, annexation, regulatory takings, land use regulation or planning and zoning activities or proceedings, however characterized, whether such liability accrues directly against you or by virtue of any agreement entered into by or on your behalf. . . .

16. No ***claim*** exists where the alleged harm for which compensation is sought derives from performance or nonperformance of terms of a contract, concerns the measure of performance or payment related to contract performance, derives from fines, penalties or administrative sanctions imposed by a governmental agency, or is generated by intergovernmental handling or allocation of funds according to the law. The ***claims*** for which this section provides defense and indemnification must arise out of conduct of a tortious nature or be premised upon allegation of unlawful violation of civil rights pursuant to state or federal law.

The County filed this action against ICRMP, seeking a declaratory ruling that ICRMP had a duty to defend and indemnify it against Alamar's claims. Both parties moved for summary judgment. The district court determined "that if coverage exists, it arises only under the Errors and Omissions Insuring Agreement." The County apparently conceded this point. The parties also

4

agreed that the errors and omissions section *did apply* to Alamar's allegations, so, unless ICRMP could invoke an exclusion, ICRMP had a duty to defend the County.

The district court concluded that Alamar's claims arose from or were connected with planning and zoning or land use decisions and that Alamar alleged intentional misconduct. The court further determined that the Policy expressly excluded coverage for those types of claims. It therefore held that ICRMP had no duty to defend the County and granted summary judgment to ICRMP. The County timely appealed. The only issue for this Court is to determine whether the district court erred in holding that the County's claim for defense was excluded.

## II.
## DISCUSSION

### A.      Standard of Review.

In reviewing a grant of summary judgment, "this Court employs the same standard as used by the district judge originally ruling on the motion." *Hoyle v. Utica Mut. Ins. Co.*, 137 Idaho 367, 371, 48 P.3d 1256, 1260 (2002). Summary judgment must "be rendered forthwith if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." I.R.C.P. 56(c). We exercise free review over matters of law. *Martel v. Bulotti*, 138 Idaho 451, 453, 65 P.3d 192, 194 (2003).

### B.      The district court correctly determined that the County's claim for the Alamar litigation was excluded from coverage under the Policy.

Because the parties do not present any factual disputes on appeal, the question before the Court is whether ICRMP, as a matter of law, properly refused to defend the County. An insurer's "duty to defend arises upon the filing of a complaint whose allegations, in whole or in part, read broadly, reveal a potential for liability that would be covered by the insured's policy." *Hoyle*, 137 Idaho at 371–72, 48 P.3d at 1260–61. The insurer need only look at the words of the complaint "to determine if a possibility of coverage exists." *Id.* at 373, 48 P.3d at 1262. If the complaint discloses no possibility of coverage, the insurer may properly decline to defend against it. *Id.* at 375, 48 P.3d at 1264.

#### 1.      The Alamar claims arose out of or were connected with land use regulation or planning and zoning activities.

The Policy expressly excludes "any claim of liability arising out of or in any way connected with . . . land use regulation or planning and zoning activities or proceedings, however

5

characterized." The County contends that "ICRMP asks the Court to stretch [this] exclusion to include the civil rights claims." They argue that because Alamar alleged FHA violations, and because the FHA is a subsection of the Civil Rights Act of 1968, ICRMP can and should have expressly listed it as an exclusion. Because the Policy does not specifically exclude such civil rights claims, the County suggests that the plain language of the Policy cannot be read to exclude Alamar's FHA claims. The County also argues, with regard to the Policy's exclusion of intentional acts, that violations of the FHA can be either intentional or unintentional, and Alamar's complaint is sufficient to put the County on notice of either theory. According to the County, the Policy's exclusion of claims for intentional wrongful acts does not apply here because Alamar could also have pursued the unintentional theory. The County thus contends that the complaint is reasonably read to include *some* covered claims, so ICRMP had a duty to defend.

In response, ICRMP points out that the land use exclusion is written in the broadest language, clearly excluding any possibility of coverage for any activities or proceedings in any way connected with regulation of the usage of land. ICRMP contends that there is no claim in the complaint that does not arise out of the County's activities relating to Alamar's land use application. It is irrelevant for purposes of the land use exclusion whether the County's violation of the provisions of the FHA were or were not intentional.

We agree with ICRMP. Alamar's claims did indeed arise out of, or were connected with, the County's land use regulations. Alamar alleged that decisions made by the P&Z and Board on its land use application constituted violations of the FHA. The County is correct that Alamar's causes of action are readily categorized as civil rights claims. However, Alamar's complaint could not more obviously allege "liability arising out of or . . . connected with . . . land use regulation or planning and zoning." The County admitted as much in its complaint in this action:

> On or about January 13, 2009, *Alamar Ranch, LLC*, filed an action in U.S. District Court, District of Idaho, against County of Boise alleging violations of the [FHA]. *The violations are alleged in connection with the: (1) County of Boise Planning and Zoning Commission's denial of a conditional use permit* for a residential treatment facility designed to house individuals allegedly protected under the Fair Housing Act . . . and/or (2) County of Boise Board of Commissioners' *imposition of conditions of permit approval* . . . . (emphasis added).

As the district court wrote, "[U]nder a reasonable reading of the Alamar complaint there is no

arguable potential that Alamar's claims could be interpreted as anything other than alleging Boise County's discriminatory actions arose out of planning and zoning or land use regulation or proceedings." Because the Policy clearly excluded such claims, ICRMP had no duty to defend the County. Because of the district court's correct holding in this regard, we need not consider its ruling with regard to the intentional act exclusion.

**2.** **There is no exception to the errors and omission exclusions that "resurrects" coverage.**

The County argues that any exclusion which would otherwise relieve ICRMP's duty to defend is inapplicable because "an exception . . . found in Paragraph 16 of Section IV of [the Policy] resurrects coverage for torts and civil rights claims." ICRMP counters that accepting the County's argument "would render all of the exclusions in [the Policy] meaningless in the context of an alleged civil rights violation." Exclusion Sixteen provides:

> No claim exists where the alleged harm for which compensation is sought derives from performance or nonperformance of terms of a contract, concerns the measure of performance or payment related to contract performance, derives from fines, penalties or administrative sanctions imposed by a governmental agency, or is generated by intergovernmental handling or allocation of funds according to the law. The claims for which this section provides defense and indemnification must arise out of conduct of a tortious nature or be premised upon allegation of unlawful violation of civil rights pursuant to state or federal law.

The exclusion has no application in this case.

The first sentence of Exclusion Sixteen makes it clear that the errors and omissions coverage does not apply to contract disputes, penalties imposed by a governmental agency, or harms generated by handling of public funds. The second sentence of the exclusion relates only to the first sentence and clarifies that the coverage exclusions listed in the first sentence do not extend to tortious acts otherwise covered. For example, the first sentence would exclude coverage for an action alleging a breach of contract while the second sentence clarifies that the exclusion would not apply to a claim brought by one contracting party against the other for conduct of a tortious nature or violative of civil rights. Furthermore, no language in either sentence of Exclusion Sixteen can be read to apply in any manner to the exclusion for all claims arising out of land use regulation.

### III.
### CONCLUSION

The district court properly granted summary judgment to ICRMP based on the land use exclusion in the Policy, and we therefore affirm the Judgment of the district court. Costs on appeal are awarded to ICRMP.

Chief Justice BURDICK, and Justices EISMANN, W. JONES and HORTON CONCUR.