# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 38884

BRIAN P. WOODWORTH, )
    )
    Plaintiff-Appellant, )
    )     Boise, February 2013 Term
v. )
    )     2013 Opinion No. 42
STATE OF IDAHO, by and through its )
IDAHO TRANSPORTATION BOARD and )     Filed: April 1, 2013
IDAHO TRANSPORTATION )
DEPARTMENT, )     Stephen W. Kenyon, Clerk
    )
    Defendant-Respondent. )
_____ )

Appeal from the District Court of the Third Judicial District of the State of Idaho, Canyon County. The Honorable Bradly S. Ford, District Judge.

The judgment of the district court is <u>affirmed</u>.

Crandall Law Office, Boise, and Patrick D. Furey, Boise, for appellant. Patrick D. Furey argued.

Lopez & Kelly, PLLC, Boise, for respondent. Michael E. Kelly argued.

_____

J. JONES, Justice.

Brian Woodworth initiated this action against the State of Idaho and the City of Nampa to recover damages for injuries he sustained while crossing a state highway. The district court granted summary judgment in favor of the defendants and Woodworth timely appealed. We affirm.

## I.
## FACTUAL AND PROCEDURAL HISTORY

On October 29, 2007, at approximately 7:34 PM, Woodworth was struck by a vehicle and injured while pushing a shopping cart across 11th Avenue South at 3rd Street in Nampa, Idaho (hereinafter "Intersection"). This section of 11th Avenue is part of U.S. Highway 30, which is part of the state highway system. At the location of the accident, 11th Avenue was a five-lane

road, with two north bound lanes, two south bound lanes, and a center turning lane. The intersection of 11th Avenue and 3rd Street is a "T" intersection with 3rd Street terminating as it meets 11th Avenue. There was no marked pedestrian crosswalk across 11th Avenue in the area where Woodworth was hit.

Woodworth filed suit against the State of Idaho, by and through its Idaho Transportation Board and Idaho Transportation Department, and the City of Nampa to recover for his injuries on October 27, 2009. He alleged two counts: (1) negligence per se and (2) common law negligence. However, at a motion hearing Woodworth's counsel stated that he was only pursuing his common law negligence claim.

In February of 2011, both defendants moved for summary judgment. Following a motion hearing, the court granted both motions. The district court granted summary judgment in favor of the State on two separate grounds. First, the court found that the State was entitled to immunity from suit under I.C. § 6-904(7). Second, regardless of immunity, the court found that Woodworth failed to raise a genuine issue of material fact that the State acted negligently. Following the summary judgment ruling, Woodworth reached a settlement with Nampa whereby the City was dismissed from the case. Woodworth filed an appeal with regard to the court's dismissal of his claim against the State.

## II.
## ISSUES ON APPEAL

I.     Did the district court err in holding the State immune from suit under I.C. § 6-904(7)?
II.    Did the district court err by finding that Woodworth failed to present a viable negligence claim against the State?

## III.
## DISCUSSION

### A.     Standard of Review.

In reviewing a grant of summary judgment, this Court employs the same standard as used by the district court originally ruling on the motion. *Cnty. of Boise v. Idaho Cntys. Risk Mgmt. Program, Underwriters*, 151 Idaho 901, 904, 265 P.3d 514, 517 (2011). Summary judgment is proper when "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." I.R.C.P. 56(c). This Court exercises free review over questions

of law. *Cnty. of Boise*, 151 Idaho at 904, 265 P.3d at 517. "Whether a duty exists is a question of law." *Chavez v. Barrus*, 146 Idaho 212, 223, 192 P.3d 1036, 1047 (2008).

### B.      The State is entitled to governmental immunity under I.C. § 6-904(7).

The district court granted the State's motion for summary judgment on the ground that the State was immune from Woodworth's suit under I.C. § 6-904(7). On appeal, Woodworth contends that the district court erred in applying I.C. § 6-904(7) to this case. Woodworth contends that I.C. § 6-904(7) is not applicable here because his Complaint did not allege that the State negligently planned or designed the Intersection. Rather, Woodworth claims that he sued the State "for its failure to perform any engineering study and to do what the study, if performed, would have shown to be necessary." Woodworth further contends that the State mischaracterized his argument to the district court as one relating to the design of the Intersection in order to invoke immunity under I.C. § 9-604(7).

In response, the State argues that Woodworth's argument fails because "it mischaracterizes the Appellant's own cause of action and, as a result, mistakenly asserts that Idaho Code § 6-904(7) is not on point." The State insists that Woodworth's claims "arise out of the 'plan or design for the construction or improvement' of a state highway." Because the State believes that Woodworth's claims arise out of the plan or design for the construction or improvement of the Intersection, it contends that it is immune under I.C. § 6-904(7).

The Idaho Tort Claims Act, I.C. §§ 6-901 to 929, "abrogates the doctrine of sovereign immunity and renders a governmental entity liable for damages arising out of its negligent acts or omissions." *Lawton v. City of Pocatello*, 126 Idaho 454, 458, 886 P.2d 330, 334 (1994). However, the Act also "preserves the traditional rule of immunity in certain specific situations." *Id*. Idaho Code § 6-904(7), entitled Exceptions to Governmental Liability, provides that:

> A governmental entity and its employees while acting within the course and scope of their employment and without malice or criminal intent shall not be liable for any claim which:
> ….
>
> (7) Arises out of a plan or design for construction or improvement to the highways, roads, streets, bridges, or other public property where such plan or design is prepared in substantial conformance with engineering or design standards in effect at the time of preparation of the plan or design or approved in advance of the construction by the legislative body of the governmental entity or by some other body or administrative agency, exercising discretion by authority to give such approval.

3

Where a plaintiff's claim arises out of an alleged negligent plan or design on the part of a governmental entity, the entity is entitled to immunity under I.C. § 6-904(7), if the entity can "establish (1) the existence of a plan or design that was (2) *either* prepared in substantial conformance with existing engineering or design standards *or* approved in advance of construction by the legislative or administrative authority." *Lawton*, 126 Idaho at 459, 886 P.2d at 335.

In this case, the district court correctly applied the immunity test outlined by this Court in *Lawton*. With respect to the first element, the existence of a plan, the Court relied on the Affidavit of Kevin Sablan, District 3 Traffic Engineer for the Idaho Department of Transportation.[1] In his affidavit, Sablan stated that his office researched and reviewed files for plans and designs for the construction and improvement of the Intersection. According to Sablan, the most recent plan developed for the Intersection was Plan 3B29, which was prepared in 1954. The district court found the State's evidence on this element to be uncontroverted. With regard to the second *Lawton* element, the district court found that the plan for the Intersection was prepared in substantial conformance with the engineering standards of the time and that the Intersection was also approved in advance of construction by the appropriate governmental authority.

On appeal, Woodworth has not challenged the district court's application of *Lawton* to this case. Rather, as mentioned above, Woodworth asserts that this case simply does not invoke the immunity provision of I.C. § 6-904(7) because his cause of action does not arise from a claim that the State negligently planned or designed the Intersection. Thus, the main issue before the Court in this case is whether Woodworth's claim against the State arises from an assertion that the Intersection was negligently planned or designed.

The district court found that "Woodworth's action arises out of his claims that the state failed to "located, design, construct, reconstruct, alter, repair or maintain" 11th Avenue. We agree, and accordingly find that Woodworth's common law negligence claim arises out of the "plan or design" of the Intersection.

The essence of Woodworth's negligence claim against the State is expressed in paragraph eight of his Complaint, which alleges:

Because the crossing was so frequently used by pedestrians and because it lacked

---

[1] The City of Nampa and the Intersection where Woodworth was struck is part of District 3.

4

traffic control devices, warning or markings; and because the lawfully permitted speed in the four main lanes of Eleventh Avenue North was fully 35 miles per hour, the crossing was sufficiently hazardous to public safety as to present the requisite 'warrants' for a substantial pedestrian crosswalk system and enhanced lighting, all of which would have been shown by a competent traffic engineering study had the same been conducted by or at the direction of the [State].

Paragraph eight illustrates that Woodworth is in fact taking issue with the plan and design of the Intersection—contrary to his assertions otherwise. The engineering study that Woodworth argues should have been performed would not have been necessary, but for the inferior design of the intersection based on the: (1) lack of traffic control devices; (2) lack of warnings and markings; (3) lack of enhanced lighting; and, (4) high rate of speed.

The plain language of I.C. § 6-904(7) provides the State with immunity from any negligence claim that merely "arises out of" the plan or design for construction or improvement to the highways. To "arise" is simply to originate or stem from. BLACK'S LAW DICTIONARY 115 (8th ed. 2004). Thus, based on the text of I.C. § 6-904(7), the State has immunity from all claims that originate or stem from a plan or design. Accordingly, a plaintiff's claim need not be based primarily on negligent plan or design to invoke immunity under I.C. § 6-904(7). In this case, Woodworth's claim does arise from allegations that the Intersection was negligently designed and/or planned. And, as a result, we hold that the district court properly invoked the immunity provision of I.C. § 6-904(7).

Woodworth also argues that such a holding will "forever immunize" the State from "failing to inspect for, find and correct or warn of hazards that have arisen" over time. A key element of Woodworth's argument is that in the fifty-four years since the Intersection was designed and constructed, the burden on the Intersection has dramatically changed due to increased usage. The increased usage, Woodworth argues, makes the Intersection's formerly adequate and approved design currently inadequate.

This is not the first time that this Court has heard such an argument on appeal. In *Leliefeld v. Johnson*, the appellant raised precisely the same "change in conditions" argument. 104 Idaho 357, 659 P.2d 111 (1983). There, two large commercial trucks had collided. *Id.* at 361, 659 P.2d at 115. The plaintiff, an injured truck driver, brought suit against the other driver and the State. *Id.* The actual collision occurred on a State bridge. *Id.* The roadways from each direction leading to the bridge were twenty-two feet wide. The bridge, which was built in 1937, was only twenty feet wide and no warning signs were erected concerning the bridge's width. *Id.* The Court noted

it to be "uncontested that the bridge was constructed in conformance with the standards applicable in 1937." *Id*. at 366, 659 P.2d at 120. However, the plaintiff's theory at the trial court was that:

> [T]he change in traffic conditions on [the bridge] since 1937 made what may once have been a safe bridge unsafe, and that the State was put on notice of the hazardous nature of the bridge by (1) its knowledge of changing standards for such bridges, (2) its knowledge of changes in traffic flow conditions, and (3) its knowledge of accidents and frequent collisions with the bridge.

*Id*. at 367, 659 P.2d at 121. At the conclusion of the jury trial in *Leliefeld*, the district court instructed the jury that immunity under I.C. § 6-904(8)[2] "is not necessarily permanent or perpetual" and that the immunity "may disappear if and when conditions have changed." *Id*. On appeal, we rejected the trial court's instruction regarding the longevity of the State's immunity under I.C. § 6-904(8) and very clearly held that I.C. § 6-904(8) "provides for perpetual immunity." *Id*. at 369, 659 P.2d at 123. In this sense, Woodworth's concern that our case precedent addressing I.C. §6-904(7) will forever immunize the State has some foundation. It is true that plan or design immunity under I.C. § 6-904(7) can potentially extend into perpetuity—so long as *Lawton* is satisfied.

Although immunity under I.C. § 6-904(7) is potentially perpetual, it is not absolute and does not prevent Woodworth, or other plaintiffs, from showing that the State has acted negligently by failing to warn,[3] by violating provisions of the Idaho Code, or by violating a non-discretionary directive of the Manual on Uniform Traffic Control Devices (MUTCD).[4] This Court has held that the MUTCD has the force and effect of law, and that the State's failure to comply with a mandatory provision of the MUTCD constitutes negligence per se. *Esterbrook v. State*, 124 Idaho

---

[2] At the time *Leliefeld* was heard, plan/design immunity was codified in I.C. § 6-904(8). However, the statute has since been amended, resulting in subsection (7) addressing plan/design immunity.

[3] We expressly held in *Leliefeld* that "[t]he construction we place upon § 6-904(8) does not preclude a finding of liability founded upon a failure to warn of a dangerous condition." *Id*. However, in this case Woodworth has made no claim based on an allegation that the State was negligent due to a failure to warn.

[4] Pursuant to I.C. § 40-312(1) the Idaho Department of Transportation adopted the MUTCD. IDAPA 39.03.41.004.

> The [MUTCD] is published by the Federal Highway Administration of the U.S. Department of Transportation. The 2009 edition including revisions 1 and 2 of the Manual with an effective date of June 13, 2012, is hereby incorporated by reference and made a part of the Rules of the Idaho Transportation Department.

*Id*. (The Rule excepts certain provisions not relevant here).

680, 682, 863 P.2d 349, 351 (1993). Thus, although immunity under I.C. § 6-904(7) is broad and long lasting, it does not absolutely bar negligence claims related to the plan or design of a State highway where the plaintiff can point to a specific statute or a mandatory provision of the MUTCD that has been violated.

Although Woodworth's common law negligence claim is barred by I.C. § 6-904(7), his claim also fails because his Complaint and briefing failed to show that the State had any duty to conduct the "engineering study" he believes supports his case.

**C.      Woodworth has failed to present a viable negligence claim against the State.**

Woodworth's Complaint also asserts that the State had a duty to perform an engineering study of the Intersection. In his briefing to this Court, Woodworth states that rather than suing the State for negligent design, he sued the State "for its failure to perform any engineering study and to do what the study, if performed, would have shown to be necessary." However, Woodworth fails to support this allegation with any substance. The following excerpts of paragraphs seventeen and twenty-one of the Complaint illustrate this failure.

> [The State] had affirmative statutory duties pursuant to Idaho Code § 40-310, 40-313, 40-502, 40-1310, 40-312 … MUTCD § (A) 1A-1, MUTCD § (C) 1A-3, (D) 1A-3.1, (E) 1(A)-4, (R) 2C-1 and other provisions to inquire, to inspect and to cause to be made and kept various surveys, engineering studies, maps, plans, specifications and estimates for alteration, repair and maintenance of state highways.
> …
>
> [The State's] failure to perform any engineering study … before the subject accident left the plaintiff brain-damaged and [the State's] failure[] to act in accordance with what ordinary care required on the face of what such an engineering study would have shown constituted breech[].

Beyond mere citation to "Idaho Code § 40-310, 40-313, 40-502, 40-1310, 40-312 … MUTCD § (A) 1A-1, MUTCD § (C) 1A-3, (D) 1A-3.1, (E) 1(A)-4, (R) 2C-1" in his Complaint, Woodworth does not provide any language to support his claim that the State had a duty to perform a study or was negligent in failing to perform an engineering study. After careful examination of the Idaho Code and MUTCD provisions cited by Woodworth the only provision that mentions an engineering study is § 2C.01.01 of the MUTCD. Section 2C addresses "Warning Signs and Object Markers," and subpart .01 states "[t]he use of warning signs shall be based on an engineering study or on engineering judgment." However, § 2C.01 does not create any duty to conduct an engineering study, it merely requires that an engineering study or engineering

7

judgment be used in the event warning signs are erected. As a result, we find that Woodworth has failed to support his allegation that the State was negligent in its failure to conduct an engineering study.

In its briefing, the State acknowledged its obligation under I.C. § 40-201 to improve and maintain the state highways. However, the State argued that to the extent it owed any duty to Woodworth, that duty was fulfilled by complying with the State's High Accident Location (HAL)[5] monitoring program. In response, Woodworth contended that participation in the HAL program did not fulfill the statutory duties the State owed Woodworth. Ultimately, the district court found merit in the State's argument and found that the HAL monitoring program fulfilled the State's duties under I.C. § 40-201 and all other statutes.

On appeal, Woodworth argues that the lower court's grant of summary judgment predicated on the fact that the State fulfilled its duty to Woodworth by participating in the HAL monitoring program is "clearly erroneous and cannot be upheld." In response, the State argues that the district court correctly found that the HAL monitoring program fulfilled any duties it owed pursuant to I.C. § 40-201.

Because we hold that Woodworth's claim against the State is barred under I.C. § 6-904(7), and because Woodworth has failed to present any other viable negligence claim against the State, we need not address the issues surrounding the HAL program.

## IV.
## CONCLUSION

The district court's judgment in favor of the State is affirmed. Appeal costs are awarded to the State.

Chief Justice BURDICK, and Justices EISMANN and HORTON CONCUR.


W. Jones, Justice, dissenting:

I respectfully dissent from the majority Opinion in the present case on two grounds. First, this is not a "design immunity" case. Second, even if it were, I would overrule *Leliefeld v.*

---

[5] The objectives of the HAL monitoring program are to: (1) identify locations on the State Highway System with potential safety deficiencies; (2) systematically compare problem locations on a statewide basis; and, (3) minimize the probability of identifying spurious problem areas.

8

*Johnson*, 104 Idaho 357, 659 P.2d 111 (1983),  holding that design immunity is perpetual, as that decision was based on poor legal reasoning and has proven to be unwise as a matter of policy.

This case is not and never has been a "design immunity" case.  The majority concedes that, under *Leliefeld* failure-to-warn claims are not subject to "design immunity" pursuant to I.C. § 6-904(7).  This view is in accord with other jurisdictions interpreting similar statutes.  *See State v. Kallio*, 557 P.2d 705, 706 (Nev. 1976) (remedying hazardous conditions or warning of such conditions are alternative duties).  Here, it is absolutely indisputable that there were ample allegations in the Complaint of a failure to warn.  Even under the majority's interpretation, Woodworth's claim should not have been thrown out.  Furthermore, I would hold that this is a claim based not on the "design" of the highway or any subsequent improvements, but rather on the failure to make such improvements at all.

Although the Complaint mentions in a preliminary paragraph that the State had a duty to design the highway, it also alleges in paragraph 5 that "at all times material to this action ITD was statutorily obligated by Idaho Code § 40-313(1) to 'erect and maintain, whenever necessary for public safety and convenience, suitable signs, markers, signals and other devices to control, guide and **warn** pedestrians and vehicular traffic . . . travelling upon the state highway system.' " (Emphasis added.)  This paragraph clearly alleged a duty to warn mandated by statute, which the State Legislature would not do if indeed the State were immune from such duties.  The Complaint further alleged in paragraph 8 that the crossing involved in this accident had poor lighting, lacked traffic control devices, warnings or markings and, together with the thirty-five-mile-per-hour speed limit, was hazardous to public safety.  It further alleged that ITD was fully aware of multiple occasions before October 29, 2007 that pedestrians using the crossing were struck and seriously injured by motor vehicles, resulting in accident reports duly filed with the ITD.  It also alleged a petition was filed by local residents seeking the installation of suitable traffic control devices to promote safety.  The Complaint further alleged that the ITD breached its statutory duties, which were enacted by the Idaho legislature to promote safety of members of the public crossing state highways, all of which proximately caused plaintiff's brain damages and other injuries.  In short, the Complaint in this case clearly alleged a duty to warn and statutory and common law negligence claims for personal injury resulting in damages to the plaintiff totally unrelated to any design issues.

Somewhere along the line the matter got twisted by the State and court into a "design immunity claim" resulting in a motion for summary judgment by ITD seeking the immunity provided by the Idaho Tort Claims Act.[6] Although plaintiff argued that he was not contesting the immunity of ITD for the initial design of the highway, the State nevertheless persisted that his claims "arise out of the 'plan or design' for the construction or improvement of a state highway." The case also focused on plaintiff's argument that the ITD should have implemented a traffic engineering study of the intersection. That claim, however, was not a cause of action, but rather simply an argument that the ITD should have performed some study to determine what it should do to comply with its obligations under statutory and common law to maintain safe public roadways pursuant to law. The Complaint did not allege that the study was a mandatory duty in and of itself, but was offered only as a suggestion as to what could likely be done to determine how to improve safety at this particular intersection. The district court gave lip service to plaintiff's argument that ITD "failed to use ordinary care to carry out its responsibilities for management and oversight of the subject segment of 11th Avenue North," but it focused entirely upon the basis of the State's motion for summary judgment, which was design immunity under IC § 6-904(7). The court ignored completely the common law negligence claim and statutory duties which the Complaint clearly alleged were breached. Again, this is not and never has been a design immunity case.

The majority of this Court likewise joins the design immunity bandwagon. Nothing is ever said about the fact that this is a duty to warn and common law negligence case as well as a claim for breach of statutory duties imposed by the Legislature on ITD.

In opposing the State's motion for summary judgment, plaintiff pointed out that within a few weeks after plaintiff was injured, an engineering firm recommended to Nampa's public works director the installation of a new crosswalk with pedestrian-actuated (push button) in-pavement flashers, an adjacent post-mounted sign, and amber beacons. The letter also noted that nine people in the last decade had been injured in the crosswalk and that a lighted crosswalk had long been anticipated by residents in the area. None of those matters are matters of "design". They are at most matters of improvements or safety measures in the nature of signage and warning devices. The plaintiff's opposition to ITD's motion for summary judgment was supported by a report from an expert engineer who opined that this particular intersection, based

---

[6] I.C. §§ 6-901 to -929.

on recognized engineering standards, was not reasonably safe for pedestrian crossings on the date of the accident. He further opined that it could be improved by installation of a median island and an advance warning beacon system.

Plaintiff's opposition to ITD's motion for summary judgment at the very least raised a genuine issue of material fact regarding whether ITD breached its duty to warn of dangers of which it was clearly aware and its common law and statutory duties resulting in serious injury to the plaintiff. Design immunity is totally irrelevant in this case because the original design of the highway was never questioned.

However, even if this were a design immunity case, I would overrule the holding in *Leliefeld*, *supra*, that design immunity is perpetual. I was not on the Court at the time of the *Leliefeld* decision and, if I were, I would have dissented. Even at the time *Leliefeld* was decided, the precedent on which it relied had been reversed by the California Supreme Court with these emphatic words:

> [D]esign immunity persists only so long as conditions have not changed. Having approved the plan or design, the governmental entity may not, ostrich-like, hide its head in the blueprints, blithely ignoring the actual operation of the plan. Once the entity has notice that the plan or design, under changed physical conditions, has produced a dangerous condition of public property, it must act reasonably to correct or alleviate the hazard.

*Baldwin v. State*, 491 P.2d 1121, 1127 (Cal. 1972). I find myself in wholehearted agreement with Justice Bistline, who, in his dissent in *Leliefeld*, lamented that "Idaho litigants are plagued now and henceforth with overruled California case law which is not visited upon Californians, that is, unless they are foolish enough to travel [on highways] in Idaho." 104 Idaho at 381, 659 P.2d at 135. I am also persuaded by the following commentary from a New York court on the question of whether design immunity should be perpetual:

> In the area of traffic design engineering, a municipality will generally be accorded qualified immunity from liability arising out of its highway planning decisions. A municipality is entitled to qualified immunity where a governmental planning body has entertained and passed on the very same question of risk as would ordinarily go to the jury. However, a municipality may be held liable if, after being made aware of a dangerous traffic condition, it does not undertake an adequate study to determine what reasonable measures may be necessary to alleviate the condition, or, having determined what reasonable measures were necessary, it unjustifiably delays in taking them. In addition, **after the municipality implements a traffic plan it is under a** _continuing duty to review its plan in the light of its actual operation._

*Turturro v. City of New York*, 908 N.Y.S.2d 738, 740–41 (N.Y. App. Div. 2010) (emphasis added. citations and quotation marks omitted).

I firmly believe that the design immunity provided in I.C. § 6-904(7) was never intended to be perpetual. It is impossible for me to believe that the Legislature intended that once the highway is designed it is forever hallowed. If it did so intend, why would it enact statutes such as I.C. § 40-313(1) requiring the State to erect signage and warning devices to warn pedestrians and traffic of dangerous conditions? This particular stretch of highway was designed in 1954. Now, nearly sixty years later, the area surrounding this highway has dramatically changed. What was once a sleepy rural town is now a busy city with far heavier traffic. Is the State under no obligation to review the safety of a roadway, even after the passage of decades, massive changes in the surroundings, and a litany of deaths? What if a shopping center, a school, or a hospital were built in the area? I simply cannot countenance a rule that would absolve the State of any duty under these circumstances, for all eternity. A highway at some point can clearly become deficient, inadequate or even extremely hazardous due to changed conditions, and therefore require improvements. To say as the district court and this Court seem to say, that the State has no duty to take any further action with respect to warnings, upgrades, crossing markers, lighting, speed limit, or any other safety precaution simply because the original design was acceptable sixty years ago is incomprehensible. I for one cannot accept that reasoning. I therefore would overrule *Leliefeld*, even if this were a design immunity case, which I have already stated it is not. I simply cannot agree with the decision of the district court or the majority here that the design immunity of I.C. § 6-904(7) protects the State from the claims in the present case for failure to warn or provide safety measures at this particular crossing.

Although the district court found that the High Accident Location ("HAL") Program was applicable to this case, in my opinion it is irrelevant. No showing is made by the State in its motion for summary judgment that its inability to make any safety improvements whatsoever to this location was prohibited by budget constraints. Indeed, there was no evidence relating to the IDL's budget whatsoever. Although this is merely an alternative argument, it in no way affects my conclusion that this case should be remanded to allow Woodworth an opportunity to prove the IDL's negligence and obtain any damages to which he is entitled.

12