J. JONES, Justice.
Brian Woodworth initiated this action against the State of Idaho and the City of Nampa to recover damages for injuries he sustained while crossing a state highway. The district court granted summary judgment in favor of the defendants and Wood-worth timely appealed. We affirm.
I.
FACTUAL AND PROCEDURAL HISTORY
On October 29, 2007, at approximately 7:34 PM, Woodworth was struck by a vehicle and injured while pushing a shopping cart across 11th Avenue South at 3rd Street in Nampa, Idaho (hereinafter “Intersection”). This section of 11th Avenue is part of U.S. Highway 30, which is part of the state highway system. At the location of the accident, 11th Avenue was a five-lane road, with two north bound lanes, two south bound lanes, and a center turning lane. The intersection of 11th Avenue and 3rd Street is a “T” intersection with 3rd Street terminating as it meets 11th Avenue. There was no marked pedestrian crosswalk across 11th Avenue in the area where Woodworth was hit.
Woodworth filed suit against the State of Idaho, by and through its Idaho Transportation Board and Idaho Transportation Department, and the City of Nampa to recover for his injuries on October 27, 2009. He alleged two counts: (1) negligence per se and (2) common law negligence. However, at a motion hearing Woodworth’s counsel stated that he was only pursuing his common law negligence claim.
In February of 2011, both defendants moved for summary judgment. Following a motion hearing, the court granted both motions. The district court granted summary judgment in favor of the State on two separate grounds. First, the court found that the State was entitled to immunity from suit under I.C. § 6-904(7). Second, regardless of immunity, the court found that Woodworth failed to raise a genuine issue of material fact that the State acted negligently. Following the summary judgment ruling, Woodworth reached a settlement with Nampa whereby the City was dismissed from the case. Woodworth filed an appeal with regard to the court’s dismissal of his claim against the State.
II.
ISSUES ON APPEAL
I. Did the district court err in holding the State immune from suit under I.C. § 6-904(7)?
II. Did the district court err by finding that Woodworth failed to present a viable negligence claim against the State?
III.
DISCUSSION
A. Standard of Review.
In reviewing a grant of summary judgment, this Court employs the same standard as used by the district court originally ruling on the motion. Cnty. of Boise v. Idaho Cntys. Risk Mgmt. Program, Underwriters, 151 Idaho 901, 904, 265 P.3d 514, 517 *364 (2011). Summary judgment is proper when “the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.” I.R.C.P. 56(c). This Court exercises free review over questions of law. Cnty. of Boise, 151 Idaho at 904, 265 P.3d at 517. “Whether a duty exists is a question of law.” Chavez v. Barrus, 146 Idaho 212, 223, 192 P.3d 1036, 1047 (2008).
B. The State is entitled to governmental immunity under I.C. § 6-904(7).
The district court granted the State’s motion for summary judgment on the ground that the State was immune from Wood-worth’s suit under I.C. § 6-904(7). On appeal, Woodworth contends that the district court erred in applying I.C. § 6-904(7) to this case. Woodworth contends that I.C. § 6-904(7) is not applicable here because his Complaint did not allege that the State negligently planned or designed the Intersection. Rather, Woodworth claims that he sued the State “for its failure to perform any engineering study and to do what the study, if performed, would have shown to be necessary.” Woodworth further contends that the State miseharacterized his argument to the district court as one relating to the design of the Intersection in order to invoke immunity under I.C. § 9-604(7).
In response, the State argues that Wood-worth’s argument fails because “it miseharacterizes the Appellant’s own cause of action and, as a result, mistakenly asserts that Idaho Code § 6-904(7) is not on point.” The State insists that Woodworth’s claims “arise out of the ‘plan or design for the construction or improvement’ of a state highway.” Because the State believes that Woodworth’s claims arise out of the plan or design for the construction or improvement of the Intersection, it contends that it is immune under I.C. § 6-904(7).
The Idaho Tort Claims Act, I.C. §§ 6-901 to 929, “abrogates the doctrine of sovereign immunity and renders a governmental entity liable for damages arising out of its negligent acts or omissions.” Lawton v. City of Pocatello, 126 Idaho 454, 458, 886 P.2d 330, 334 (1994). However, the Act also “preserves the traditional rule of immunity in certain specific situations.” Id. Idaho Code § 6-904(7), entitled Exceptions to Governmental Liability, provides that:
A governmental entity and its employees while acting within the course and scope of their employment and without malice or criminal intent shall not be liable for any claim which:
(7) Arises out of a plan or design for construction or improvement to the highways, roads, streets, bridges, or other public property where such plan or design is prepared in substantial conformance with engineering or design standards in effect at the time of preparation of the plan or design or approved in advance of the construction by the legislative body of the governmental entity or by some other body or administrative agency, exercising discretion by authority to give such approval.
Where a plaintiffs claim arises out of an alleged negligent plan or design on the part of a governmental entity, the entity is entitled to immunity under I.C. § 6-904(7), if the entity can “establish (1) the existence of a plan or design that was (2) either prepared in substantial conformance with existing engineering or design standards or approved in advance of construction by the legislative or administrative authority.” Lawton, 126 Idaho at 459, 886 P.2d at 335.
In this case, the district court correctly applied the immunity test outlined by this Court in Lawton. With respect to the first element, the existence of a plan, the Court relied on the Affidavit of Kevin Sabían, District 3 Traffic Engineer for the Idaho Department of Transportation.[1] In his affidavit, Sabían stated that his office researched and reviewed files for plans and designs for the construction and improvement of the Intersection. According to Sabían, the most recent plan developed for the Intersection was Plan 3B29, which was prepared in 1954. *365 The district court found the State’s evidence on this element to be uncontroverted. With regard to the second Lawton element, the district court found that the plan for the Intersection was prepared in substantial conformance with the engineering standards of the time and that the Intersection was also approved in advance of construction by the appropriate governmental authority.
On appeal, Woodworth has not challenged the district court’s application of Law-ton to this case. Rather, as mentioned above, Woodworth asserts that this case simply does not invoke the immunity provision of I.C. § 6-904(7) because his cause of action does not arise from a claim that the State negligently planned or designed the Intersection. Thus, the main issue before the Court in this ease is whether Woodworth’s claim against the State arises from an assertion that the Intersection was negligently planned or designed.
The district court found that “Woodworth’s action arises out of his claims that the state” failed to “located, design, construct, reconstruct, alter, repair or maintain” 11th Avenue. We agree, and accordingly find that Woodworth’s common law negligence claim arises out of the “plan or design” of the Intersection.
The essence of Woodworth’s negligence claim against the State is expressed in paragraph eight of his Complaint, which alleges:
Because the crossing was so frequently used by pedestrians and because it lacked traffic control devices, warning or markings; and because the lawfully permitted speed in the four main lanes of Eleventh Avenue North was fully 35 miles per hour, the crossing was sufficiently hazardous to public safety as to present the requisite ‘warrants’ for a substantial pedestrian crosswalk system and enhanced lighting, all of which would have been shown by a competent traffic engineering study had the same been conducted by or at the direction of the [State].
Paragraph eight illustrates that Woodworth is in fact taking issue with the plan and design of the Intersection — contrary to his assertions otherwise. The engineering study that Woodworth argues should have been performed would not have been necessary, but for the inferior design of the intersection based on the: (1) lack of traffic control devices; (2) lack of warnings and markings; (3) lack of enhanced lighting; and, (4) high rate of speed.
The plain language of I.C. § 6-904(7) provides the State with immunity from any negligence claim that merely “arises out of’ the plan or design for construction or improvement to the highways. To “arise” is simply to originate or stem from. Black’s Law Dictionary 115 (8th ed.2004). Thus, based on the text of I.C. § 6-904(7), the State has immunity from all claims that originate or stem from a plan or design. Accordingly, a plaintiffs claim need not be based primarily on negligent plan or design to invoke immunity under I.C. § 6-904(7). In this case, Woodworth’s claim does arise from allegations that the Intersection was negligently designed and/or planned. And, as a result, we hold that the district court properly invoked the immunity provision of I.C. § 6-904(7).
Woodworth also argues that such a holding will “forever immunize” the State from “failing to inspect for, find and correct or warn of hazards that have arisen” over time. A key element of Woodworth’s argument is that in the fifty-four years since the Intersection was designed and constructed, the burden on the Intersection has dramatically changed due to increased usage. The increased usage, Woodworth argues, makes the Intersection’s formerly adequate and approved design currently inadequate.
This is not the first time that this Court has heard such an argument on appeal. In Leliefeld, v. Johnson, the appellant raised precisely the same “change in conditions” argument. 104 Idaho 357, 659 P.2d 111 (1983). There, two large commercial trucks had collided. Id. at 361, 659 P.2d at 115. The plaintiff, an injured truck driver, brought suit against the other driver and the State. Id. The actual collision occurred on a State bridge. Id. The roadways from each direction leading to the bridge were twenty-two feet wide. The bridge, which was built in 1937, was only twenty feet wide and no *366 warning signs were erected concerning the bridge’s width. Id. The Court noted it to be “uncontested that the bridge was constructed in conformance with the standards applicable in 1987.” Id. at 366, 659 P.2d at 120. However, the plaintiffs theory at the trial court was that:
[T]he change in traffic conditions on [the bridge] since 1937 made what may once have been a safe bridge unsafe, and that the State was put on notice of the hazardous nature of the bridge by (1) its knowledge of changing standards for such bridges, (2) its knowledge of changes in traffic flow conditions, and (3) its knowledge of accidents and frequent collisions with the bridge.
Id. at 367, 659 P.2d at 121. At the conclusion of the jury trial in Leliefeld, the district court instructed the jury that immunity under I.C. § 6-904(8)[2] “is not necessarily permanent or perpetual” and that the immunity “may disappear if and when conditions have changed.” Id. On appeal, we rejected the trial court’s instruction regarding the longevity of the State’s immunity under I.C. § 6-904(8) and very clearly held that I.C. § 6-904(8) “provides for perpetual immunity.” Id. at 369, 659 P.2d at 123. In this sense, Woodworth’s concern that our case precedent addressing I.C. § 6-904(7) will forever immunize the State has some foundation. It is true that plan or design immunity under 1.C. § 6-904(7) can potentially extend into perpetuity — so long as Lawton is satisfied.
Although immunity under I.C. § 6-904(7) is potentially perpetual, it is not absolute and does not prevent Woodworth, or other plaintiffs, from showing that the State has acted negligently by failing to warn,[3] by violating provisions of the Idaho Code, or by violating a non-diseretionary directive of the Manual on Uniform Traffic Control Devices (MUTCD).[4] This Court has held that the MUTCD has the force and effect of law, and that the State’s failure to comply with a mandatory provision of the MUTCD constitutes negligence per se. Esterbrook v. State, 124 Idaho 680, 682, 863 P.2d 349, 351 (1993). Thus, although immunity under I.C. § 6-904(7) is broad and long lasting, it does not absolutely bar negligence claims related to the plan or design of a State highway where the plaintiff can point to a specific statute or a mandatory provision of the MUTCD that has been violated.
Although Woodworth’s common law negligence claim is barred by I.C. § 6-904(7), his claim also fails because his Complaint and briefing failed to show that the State had any duty to conduct the “engineering study” he believes supports his ease.
C. Woodworth has failed to present a viable negligence claim against the State.
Woodworth’s Complaint also asserts that the State had a duty to perform an engineering study of the Intersection. In his briefing to this Court, Woodworth states that rather than suing the State for negligent design, he sued the State “for its failure to perform any engineering study and to do what the study, if performed, would have shown to be necessary.” However, Woodworth fails to support this allegation with any substance. The following excerpts of paragraphs seventeen and twenty-one of the Complaint illustrate this failure.
[The State] had affirmative statutory duties pursuant to Idaho Code § 40-310, *367 40-313, 40-502, 40-1310, 40-312 ... MUTCD § (A) 1A-1, MUTCD § (C) 1A-3, (D) 1A-3.1, (E) l(A)-4, (R) 2C-1 and other provisions to inquire, to inspect and to cause to be made and kept various surveys, engineering studies, maps, plans, specifications and estimates for alteration, repair and maintenance of state highways.
[The State’s] failure to perform any engineering study ... before the subject accident left the plaintiff brain-damaged and [the State’s] failure[ ] to act in accordance with what ordinary care required on the face of what such an engineering study would have shown constituted breech[].
Beyond mere citation to “Idaho Code § 40-310, 40-313, 40-502, 40-1310, 40-312 ... MUTCD § (A) 1A-1, MUTCD § (C) 1A-3, (D) 1A-3.1, (E) l(A)-4, (R) 2C-1” in his Complaint, Woodworth does not provide any language to support his claim that the State had a duty to perform a study or was negligent in failing to perform an engineering study. After careful examination of the Idaho Code and MUTCD provisions cited by Woodworth the only provision that mentions an engineering study is § 2C.01.01 of the MUTCD. Section 2C addresses “Warning Signs and Object Markers,” and subpart .01 states “[t]he use of warning signs shall be based on an engineering study or on engineering judgment.” However, § 2C.01 does not create any duty to conduct an engineering study, it merely requires that an engineering study or engineering judgment be used in the event warning signs are erected. As a result, we find that Woodworth has failed to support his allegation that the State was negligent in its failure to conduct an engineering study.
In its briefing, the State acknowledged its obligation under I.C. § 40-201 to improve and maintain the state highways. However, the State argued that to the extent it owed any duty to Woodworth, that duty was fulfilled by complying with the State’s High Accident Location (HAL)[5] monitoring program. In response, Woodworth contended that participation in the HAL program did not fulfill the statutory duties the State owed Woodworth. Ultimately, the district court found merit in the State’s argument and found that the HAL monitoring program fulfilled the State’s duties under I.C. § 40-201 and all other statutes.
On appeal, Woodworth argues that the lower court’s grant of summary judgment predicated on the fact that the State fulfilled its duty to Woodworth by participating in the HAL monitoring program is “clearly erroneous and cannot be upheld.” In response, the State argues that the district court correctly found that the HAL monitoring program fulfilled any duties it owed pursuant to I.C. § 40-201.
Because we hold that Woodworth’s claim against the State is barred under I.C. § 6-904(7), and because Woodworth has failed to present any other viable negligence claim against the State, we need not address the issues surrounding the HAL program.
IV.
CONCLUSION
The district court’s judgment in favor of the State is affirmed. Appeal costs are awarded to the State.
Chief Justice BURDICK, and Justices EISMANN and HORTON concur.

. The City of Nampa and the Intersection where Woodworth was struck is part of District 3.

. At the time Leliefeld was heard, plan/design immunity was codified in I.C. § 6-904(8). However, the statute has since been amended, resulting in subsection (7) addressing plan/design immunity.

. We expressly held in Leliefeld that "[t]he construction we place upon § 6-904(8) does not preclude a finding of liability founded upon a failure to warn of a dangerous condition.” Id. However, in this case Woodworth has made no claim based on an allegation that the State was negligent due to a failure to warn.

.Pursuant to I.C. § 40-312(1) the Idaho Department of Transportation adopted the MUTCD. IDAPA 39.03.41.004.
The [MUTCD] is published by the Federal Highway Administration of the U.S. Department of Transportation. The 2009 edition including revisions 1 and 2 of the Manual with an effective date of June 13, 2012, is hereby incorporated by reference and made a part of the Rules of the Idaho Transportation Department.
Id. (The Rule excepts certain provisions not relevant here).